## CONSOLIDATED UNDERWRITERS v. MURPHY.

### No. 9438.

Court of Civil Appeals of Texas. Galveston. June 4, 1930.

Rehearing Denied June 19, 1930.

C. A. Lord, of Beaumont, for appellant.

Cam M. Kay and B. C. Johnson, both of Houston, for appellee.

LANE, J.

On the 27th day of September, 1927, one W. M. Murphy was an employee of Weaver Bros. & Thompson, a copartnership engaged in a sawmill business; it being a subscriber, as that term is used in the Workmen's Compensation Law of Texas (Rev. St. 1925, arts. 8306–8309), on said date, and who at such time held a valid subsisting policy of insurance covering their employees under said Compensation Law, issued by Consolidated Underwriters, an insurance company, hereinafter for convenience referred to as the insurance company.

On said 27th day of September, 1927, W. M. Murphy, husband of one Rebecca Murphy, received an injury while engaged in the course of his employment from the effects of which it is claimed he died on the 25th day of October, 1927, while the above-mentioned policy was in force and effect.

On the 7th day of February 1928, Rebecca Murphy, widow of W. M. Murphy, and his sole heir, filed with the Industrial Accident Board of Texas notice of the injury suffered by her husband and of his death, together with her claim for compensation under the provisions of said Compensation Law.

On the 17th day of May, 1928, the Industrial Accident Board made its final award and decree, awarding to Rebecca Murphy compensation for 360 weeks at $13.85 per week on account of the death of her husband, W. M. Murphy.

In due time and manner the insurance company gave notice of its objection to such award, and on the 4th day of June, 1928, brought this suit in the district court of Anderson county, Tex., to have such award set aside.

Rebecca Murphy, as defendant in such suit, filed her answer and cross-action, asserting her claim for compensation and alleging that W. M. Murphy, her husband, suffered an injury on the 23d day of September, 1927, while he was engaged in the course of his employment, from which he died on the 25th day of October, 1927, and that at the time of his injury he was a sound, healthy man 45 years of age, and had followed the sawmill business in the employ of Weaver Bros. & Thompson for approximately three years before he was injured; that he worked six days a week regularly at a daily wage of $4, and received pay for overtime and Sundays, making his average weekly wage $27.

The insurance company, by supplemental petition, answered by general denial, and, replying to defendant's cross-action, alleged that, if W. M. Murphy fell as alleged by the defendant, such fall resulted from and was caused by a dizziness or vertigo or similar attack resulting from heart failure or some other disease with which the said W. M. Murphy was affected, not having to do with or originating in the work, business, trade, or profession of his employer, and such fall, if any, was occasioned solely by such vertigo and dizziness arising from some such disease and wholly independent of the work that said W. M. Murphy was performing at the time, and did not arise out of the work of his employment, and was not sustained in the course of his employment; that heart failure, apoplexy, or some other disease was the sole cause of the death of said W. M. Murphy, and his death did not result from any injury having to do with or originating in the work, business, trade, or profession of his employer, and the death of said W. M. Murphy resulted from some disease or diseases and from some cause wholly independent of the work he was engaged in, and his death did not result from any personal injury sustained in the course of his employment within the terms, purview,

and meaning of the Compensation Law of this state.

The case was tried before a jury upon four special issues, submitted by the court as follows:

"Special Issue No. 1: Did W. M. Murphy suffer personal injury on or about September 23, 1927, while in the course of his employment with Weaver Brothers & Thompson, as alleged in defendant's First Amended Original Answer?

"Answer, 'He did,' or 'He did not,' as you find the fact to be.

"In answering this Special Issue you are instructed that one is injured in the course of his employment when he is injured as a result of being engaged in or about the furtherance of the affairs of his employer.

"If you have answered Special Issue No. 1 'he did', then answer Special Issue No. 2; otherwise you need not answer Special Issue No. 2, or any of the following issues.

"Special Issue No. 2: Did W. M. Murphy die as a result of the injury sustained by him on or about September 23, 1927, while in the course of his employment with Weaver Brothers & Thompson?

"Answer 'He did' or 'He did not,' as you find the fact to be.

"Special Issue No. 3: Do you find from the evidence that manifest hardship and injustice would result to Rebecca Murphy if the compensation, if any, is not paid to her in a lump sum?

"Answer, 'It would' or 'it would not' as you find the fact to be.

"Special Issue No. 4: What sum do you find from the evidence before you to be an average weekly wage for W. M. Murphy?

"Answer by stating the amount in dollars and cents.

"You will determine your answer to this Special Issue in any manner which, in your judgment, may seem just and fair to both parties."

The jury answered the first two questions, "He did," the third, "It would," and the fourth, $24 per week.

Upon the trial of the cause, the parties filed in court a written agreement as follows:

"1. That Consolidated Underwriters is and was on September 23, 1927, a mutual and reciprocal insurance association duly qualified under the laws of Texas to carry compensation insurance in this State, and on and prior to September 23, 1927, had in full force and effect a policy of insurance covering Weaver Brothers & Thompson, as a subscriber under the Compensation Law, in Anderson County, Texas.

"2. That Weaver Brothers & Thompson is and was on September 23, 1927, and had been for a long time prior thereto, a corporation created under the laws of Texas, conducting a sawmill business in Anderson County, Texas, near the town of Neches, and was subject to the terms and conditions of the Workmen's Compensation Laws of this state.

"3. That on or about February 7, 1928, Rebecca Murphy filed with the Industrial Accident Board of Texas, at Austin, notice of fatal injury to W. M. Murphy on September 24, 1927, and his death on October 25, 1927, and her claim for compensation as his sole surviving heir.

"4. That said Industrial Accident Board made its final award and decree on May 17, 1928, and Consolidated Underwriters in due time gave notice in due and proper form and manner of refusal to abide thereby and filed this suit on June 4, 1928, to set aside such award."

Upon the agreement of the parties, the evidence and answers of the jury to the several issues submitted, the court rendered judgment for the defendant wherein it is recited as follows:

"It appearing to the court from the answers of the jury to the Special Issues submitted to them that the defendant, Rebecca Murphy, is entitled to have and recover of and from the plaintiff compensation for 360 weeks at $14.40 per week; and that such compensation should be paid in a lump sum to her; and it further appearing to the court that ninety weeks of compensation has already matured, which compensation with the interest thereon amounts to the sum of $1,419.21 and that 270 weeks of the compensation is yet to mature, which with the discount deducted therefrom, makes a present value of $3,353.05, making the total present value of such compensation $4,772.26.

"It is, therefore, ordered, adjudged and decreed by the court that the defendant, Rebecca Murphy, do have and recover of and from the plaintiff, Consolidated Underwriters, said sum of Four Thousand Seven Hundred and Seventy-two Dollars and Twenty-six cents, together with interest thereon, at the rate of 6% per annum from this date until paid, and all costs in this behalf expended."

From the judgment so rendered, the insurance company has appealed.

By appellant's propositions 1 to 6, inclusive, it is substantially insisted (1) that since Mrs. Murphy, as a basis for a recovery of 60 per cent. of the weekly wage earned by her husband, W. M. Murphy, deceased, alleged that he worked six days a week for a wage of $4 per day and had so worked at the same employment for a period of three years, and made no other allegations upon which an issue as to such weekly wage could be based, the court erred in instructing the jury that, in determining what such weekly wage was, they might do so in any manner which in their judgment might seem just and

fair; (2) that, since it was shown by the undisputed evidence that the deceased, for the year next preceding his death on October 25, 1927, was paid the sum of $1,077 only, the allegation that he received $4 per day, or a total of $24 per week, and the testimony offered in support thereof, were conclusively shown to be untrue, the court erred in submitting to the jury the inquiry as to what was the weekly wage of the deceased, and the answer of the jury to such inquiry was unsupported by evidence and therefore not sufficient as a basis for the judgment rendered.

We overrule the contentions. There was no evidence showing that the deceased worked at his employment for the whole of the year next preceding his death, but to the contrary it was shown that he did not so work, and therefore his weekly wage could not be arrived at by dividing $1,077 by the 52 weeks constituting a year. It does show, however, that he worked substantially the whole of such year. But since it was shown by the undisputed evidence, the testimony of Rebecca Murphy, of Mr. B. A. Beard, bookkeeper for Weaver Bros. & Thompson, and of D. A. Thompson, a member of the firm of Weaver Bros. & Thompson, that the daily wage of the deceased for the year next preceding the destruction of the sawmill, which occurred on the 27th day of August, 1927, just 27 days before the deceased received his injury on September 23, 1927, was $4 per day, and that, after he resumed his employment after the mill was destroyed, he received only $3 per day for about three weeks before he was injured, the weekly wage of the deceased should be established by the showing that he received a daily wage of $4 per day for substantially the whole of the year next before his injury, as provided by section 1, first subsection 1 of article 8309 of the Revised Civil Statutes of 1925, which provides:

"If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

Rebecca Murphy testified that her husband had worked for Weaver Bros. & Thompson for several years next before his death, working regularly for six days in each week at a wage of $4 per day, and sometimes he would work overtime, and that some weeks he was paid $24 and some times $28 to $30.

B. A. Beard testified that the deceased had worked for Weaver Bros. & Thompson for the five years next before his death and was working for them on the day of his death.

D. A. Thompson testified that their mill burned down on the 27th day of August,

1927; that Murphy had been employed up to that time by them as engineer and fireman at a daily wage of $4 per day, and, when he came to work after the mill was destroyed, he worked for $3 per day, but that he did not work for some time after the mill burned.

Beard, the bookkeeper, testified that Murphy drew $3 per day for only two weeks after the mill burned.

This was all the evidence relating to the daily wage paid to Murphy, and was all the evidence to which the jury could possibly look in determining what such wage was.

■■ We agree with appellant that the instruction of the court to the jury, to the effect that they should, in determining what the weekly wage of the deceased was, do so in any manner which in their judgment might seem just and fair to both parties, was unauthorized, but, in view of the undisputed evidence showing that such wage was not less than $24 per week up to the time the mill was burned on August 27, 1927, no harm could have resulted to appellant by reason of such instruction.

By appellant's seventh proposition it is insisted that the finding of the jury that W. M. Murphy died from the effects of his injury received on the 23d day of September, 1927, is unsupported by the evidence and so against the great weight and preponderance of the evidence as to be clearly wrong, because the testimony shows that Murphy died from heart failure or some such disease acting wholly independent of such injuries, and because it was shown that the cause of his fall which resulted in his injury was from dizziness or swimming of the head.

We overrule such contentions. There was ample evidence to support the jury's finding complained of.

We think the argument of appellee's attorney, Johnson, complained of by appellant's proposition No. 8, was improper, but we think it clear that it could not in any manner have affected the jury's verdict harmfully to appellant.

■ Cam M. Kay, attorney for appellee, in argument to the jury said: "This insurance company was out manufacturing evidence, and it prepared a statement for this man Geo. Wyatt to sign (referring to the plaintiff's witness, Wyatt), and they got Wyatt to sign it, and he didn't know what was in it and didn't know there would be any hereafter to it, but after it was all over he had to stick to what was in the statement; they simply showed him the statement and told him he would have to stand by it, and now he comes into this courthouse, and with that parsimonious grin on his face—I don't believe a word he says, and you don't either."

And again said, in reference to special issue Nos. 1, 2, and 3 submitted by the court: "Gentlemen of the Jury, each and all of these

questions 1, 2, and 3 you should answer 'yes', and you will do so if you want to find what is just and right for this colored woman."

Both of such arguments were complained of as being prejudicial to appellant, and which tended to cause and in all probability did cause the jury to return a verdict favorable to appellee.

We must sustain appellant's complaints of both of said arguments. They were improperly made. The first was inflammatory and calculated to and probably did influence the jury in arriving at its verdict favorable to appellee. There was no evidence showing or tending to show that there was any fraud or undue influence practiced upon the witness Wyatt to get him to make the statement procured from him by the insurance company, nor to show that Wyatt did not know the contents of the paper signed by him, nor to show that the parties who procured such statement from the witness, or any other person, showed him the statement and told him that he would have to stand by it. Clearly eminent counsel who made the argument thought it would, at least to some degree, have an influence favorable to appellee or else he would not have made the same. Counsel should not go outside the record and make use of inflammatory language in order to influence the jury to return a verdict favorable to his client. St. Louis S. W. Ry. Co. v. Osborne (Tex. Civ. App.) 270 S. W. 922, 923; M.-K.-T. R. R. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Sash & Door Co. v. Crawford (Tex. Civ. App.) 283 S. W. 232; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Eastern Electric Co. v. Rhymes (Tex. Civ. App.) 1 S.W.(2d) 688.

In the first case cited it is said: "It was error for appellee's counsel, over appellant's objection, to tell the jury that the written statement given by appellee to the claim agent of appellant 'was a fraud upon its face and in his opinion was a hatched-up job by defendant's claim agent, and while he knew this was strong language, he meant it; that claim agents would always put it over one claiming damages by fair or foul means if necessary.' There was no evidence showing that there was any fraud practiced in getting the statement, and nothing to show that claim agents obtain statements by 'fair or foul' means. Said language was highly prejudicial and calculated to inflame the minds of the jury. Counsel should not go outside the record or use inflammatory language in order to obtain a verdict from the jury."

The argument advising the jury as to the effect of their answers to the issues submitted, and advising them to answer the questions propounded in the affirmative, so, that their verdict would favor his client, is, under the rule established by numerous decisions, reversible error. Rowley v. Braly (Tex. Civ.

App.) 286 S. W. 241; H. & T. C. Ry. Co. v. Clement Grain Co. (Tex. Civ. App.) 295 S. W. 234, 235; South Plains Coaches v. Behringer (Tex. Civ. App.) 4 S.W.(2d) 1003; McFaddin v. Hebert (Tex. Com. App.) 15 S. W.(2d) 213.

We have examined and considered the remaining assignments presented by appellant, but, in view of the necessity of a reversal of the judgment on the issues already discussed, we will overrule such other assignments without a detailed discussion of them.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.