## THE MACCABEES v. RECTOR.

### No. 1626.

Court of Civil Appeals of Texas. Eastland.

Feb. 12, 1937.

Rehearing Denied March 12, 1937.

Davidson & McMahon, of Abilene, for appellant.

Scarborough & Ely, of Abilene, for appellee.

GRISSOM, Justice.

The plaintiff sued the defendant for damages alleged to have been suffered by her as a result of a fall upon the steps of her home rented from the defendant. Plaintiff alleged, and the jury found, in substance, that the defendant rented the house to plaintiff and her mother; that as a part of the rental contract the defendant agreed to repair the back steps at said house; that the defendant did repair the steps but negligently left the top step with an outward slope which caused her fall and injury. The cause was submitted to a jury on special issues, all of which were answered favorably to the plaintiff, and the judgment was rendered against the defendant for the sum of $12,-000, from which judgment the defendant, The Maccabees, has appealed.

Appellant's first proposition is, in substance, that, since it was undisputed that appellee had certain physical defects resulting from a childhood attack of infantile paralysis which gave rise to a tendency to stumble when walking, and since the slope in the tread of the step did not exceed 1¾ inches over a width of 12 inches, and there be no evidence offered and no issue submitted "that appellant knew that said step was to be used by a person suffering [such] disabilities * * * it was incumbent upon appellee to plead and prove to the satisfaction of the court that said step in its repaired state would likely cause injury to a normal person, failing which appellee did not discharge the burden resting upon her showing appellant ought to have anticipated or foreseen her alleged injury," and therefore the court should have instructed a verdict for appellant.

It was admitted that appellee had infantile paralysis when she was 2 years of age. She was 33 at the time of the trial. There was evidence that as a result of infantile paralysis one leg was shorter than the other, that some of the muscles of this leg were atrophied, and that she had a "toe drop"

of approximately 20 per cent. On the other hand, there was evidence that prior to her alleged fall that such defects were not noticeable, that she was strong and healthy and able to do hard work.

The court gave the usual definition of proximate cause, containing the usual statement as to "foreseeableness." The jury found in answer to special issue No. 7 that plaintiff's fall was not attributable to the shortening of plaintiff's leg and foot drag or toe drop. The court instructed the jury that it could not consider any damages "on account of injuries, pains, mental and physical, or physical deformities, or injuries or damages, if any, suffered by the plaintiff as a result of her childhood attack of infantile paralysis; nor can you consider any damages, if any, to her nerves as a result of such attack of infantile paralysis." The jury was further instructed that it could not consider any damages on account of any alleged paralysis.

It appears that the cause was tried upon the theory that appellant's act in repairing the steps was negligent as applied to a normal person and without reference to any physical defects in appellee resulting from infantile paralysis. Further, the jury expressly found that the appellee's fall was not attributable to such defects.

■ Appellant's first "additional proposition" is in substance that, since the jury found the house was rented to appellee and her mother, and since the mother used the steps after they were allegedly defectively repaired and prior to appellee's fall thereon, notice of the existence of such defects was imputed to appellee "through the actual notice thereof necessarily obtained by the cotenant * * * in the use of the steps," and therefore the court should have given the requested instructed verdict for appellant.

If it be conceded that the evidence conclusively shows that appellee's mother used the steps prior to her daughter's injury, it is not shown that she actually knew of the defective condition in the steps, if such existed, and we do not think that it would follow as a matter of law that such presumed kowledge by the mother of any defective condition in the steps would be attributable to the appellee.

Said propositions are overruled.

■ While plaintiff was testifying, her counsel pretended to hand her a piece of paper and caused her to keep her hand out-

stretched at full length before the jury. Thereupon defendant's counsel, in view of the demonstration, renewed its motion to compel plaintiff to submit to a physical examination. The motion was overruled.

Plaintiff's pleadings alleged that as a result of her fall she became extremely nervous. Because of alleged injury to her nervous system she sought damages. The allegations found support in her medical testimony. She testified that at the time of the trial her condition as to nervousness had improved, that she did not then "shake."

We have found nothing in the record showing that when she extended her hand before the jury that she displayed any nervousness. If she did not then display nervousness, it certainly cannot be said that she exhibited any injury for the inspection of the jury and thereby waived the inviolability of her person. If such act revealed a lack of nervousness, it may have been detrimental to her cause but could not have been injurious to the defendant.

■ Three doctors had suggested the advisability of a possible fusion operation on the plaintiff. Some of such suggestions were contingent upon other things. However, evidence of a general nature to such effect was in the record. In the court's charge he, in writing, instructed the jury with reference thereto as follows:

"You cannot compensate the plaintiff, in any way for mental or physical pain or apprehension which might be the result of any proposed operation by the plaintiff;

"Nor, can you consider in arriving at such amount, if any, the cost of such operation; nor the loss of time or earning power or incapacity which will result therefrom."

At the close of the evidence defendant filed its motion wherein it moved the court to strike from the record all the testimony of Drs. Cash, Carrell and Perry *"concerning an operation on the plaintiff* and concerning the nature, extent, disability and expense in connection with such operation"* (italics ours), and further moved the court to instruct the jury that "they cannot and must not consider such testimony." The motion for such instruction was marked "given" and signed officially by the trial judge.

Thereafter the following proceedings were had while plaintiff's counsel was making the closing address to the jury:

Plaintiff's Counsel: "They are the only three doctors on this earth who know anything about this case, the injury to her spine, if any. *What does Dr. Carrell say? He recommends a fusion."*

Defendant's Counsel: "We object to that."

Plaintiff's Counsel: "What did he say—"

Defendant's Counsel: "We object—"

Plaintiff's Counsel: *"What did Dr. Perry say?"*

Defendant's Counsel: "We object to the argument of counsel—"

Plaintiff's Counsel: *"Sure, they would object. Certainly, they holler, cry and cry because, gentlemen—"*

The Court: "Wait a minute, Mr. Scarborough, he objects—"

Plaintiff's Counsel: "Let him state it to you. I want to go on with my argument."

Defendant's Counsel: "We object to counsel arguing to the jury that Dr. Carrell recommended a fusion operation."

The Court: "Sustain the objection."

Defendant's Counsel: "We ask the court to instruct the jury that they cannot give any consideration to that argument."

The Court: "I excluded that. I have already excluded the evidence with reference to the operation. You will not consider the argument for any purpose."

Plaintiff's Counsel: *"That deposition is before you and in this deposition Dr. Carrell says—it has been read to you and it is here for your consideration. No, your honor, I beg your pardon."*

The Court: *"I excluded that."*

Plaintiff's Counsel: *"You are right about that. It did not say not to have a fusion and I defy you, sir, to produce what he said."*

Defendant's Counsel: "We object —"

Plaintiff's Counsel: *"What did Dr. Perry say?* Of course, I do not think much of Dr. Perry. I do not think much of any fortune teller, these fellows who claim they can read the souls of men, invading the province of God Almighty Himself. I have no respect for that kind of a man."

The Court: "He wants to make an objection."

Defendant's Counsel: "I object to the argument of counsel in his statements to the jury to the effect that Dr. Carrell did not say that she ought not to have a fusion because it is a further reference to the testimony heretofore excluded by the court."

The Court: "I sustain the objection."

Defendant's Counsel: "I now move the court, by virtue of the inflammatory and prejudicial repetition with reference to the operation to discharge this jury and to declare a mistrial in this case and order a new trial."

The Court: "Overruled."

Plaintiff's Counsel: *"Oh, they would like to get away from this jury. Nobody can help this woman but you twelve men.* Sit there and laugh, Tom. It may be funny to you but not to her, sir. A poor cripple which your sin has brought about and you sit there and laugh at her misery. Your heart ought to be bigger than that and your soul broader.

*"I say to you gentlemen that Dr. Cash told you that the only relief that this woman could ever get from the pain was a fusion of the back bone to the sacroiliac. That's what he said. Dr. Cash said that from the stand and you heard him."*

The Court: "I have excluded the evidence with reference to the operation. I have instructed the jury not to consider it. Please do not argue it any more."

Plaintiff's Counsel: "You did that?"

The Court: "I did that this morning when I gave the charge."

Plaintiff's Counsel: "Well, at any rate there has been no man who has taken the stand who has disputed what Dr. Cash has said about the condition of this woman on that part of the testimony which has not been excluded. Did Dr. Carrell say she did not suffer? No. Did Dr. Perry say she did not suffer? No. What he said, the psycho-fellow, was if she would settle her lawsuit she might get all right. Gentlemen, we are doing our best to get it settled. Will you help us? If that will relieve the situation, all right." (Italics ours.)

The court had evidently excluded from the consideration of the jury all testimony of said Drs. Carrell, Perry and Cash concerning an operation on plaintiff, and the nature, extent, disability and expense in connection with such operation, and had instructed the jury that they must not consider such testimony. We think it cannot reasonably be questioned but that counsel's reference to the testimony of each of the three doctors with reference to an operation on the plaintiff, that is, "a fusion of the back bone to the sacro-iliac," after such testimony had been excluded and the jury instructed not to consider it, and over the objection of counsel, and in spite of the repeated efforts of the court at the time the argument was made to stop it, together with counsel's further indirect reference to such testimony, was error. Conceding plaintiff's testimony that "Dr Carrell told me he could operate on my back. He said that's what I needed, a fusion of those bones," had not been excluded by the court, counsel was not merely arguing that his client said that Dr. Carrell recommended a fusion operation. There was a definite reference to the excluded testimony of the three doctors and a virtual repetition of the excluded testimony of Dr. Cash. It is manifestly quite a different thing to argue that one's client testified that a certain doctor said she needed such operation and an argument in effect that three named doctors had so testified.

The argument being objectionable, it was the right, if not the duty, of appellant's counsel to object, and he should not have been criticized before the jury for doing so. Under the situation disclosed, appellant's counsel certainly had the right to move that the jury be discharged and it was manifestly prejudicial for appellee's counsel to reply: "Oh, they would like to get away from this jury. Nobody can help this woman but you twelve men."

Defendant's counsel had cross-examined plaintiff with reference to an element of damage pleaded in plaintiff's original petition which was omitted from her amended petition; that is, allegations to the effect that because of her injury she had lost the opportunity to marry. Plaintiff's testimony was in substance that she told the facts to her attorney and did not know why this change was made. There was no evidence in the record showing why counsel made the change. In addressing the jury plaintiff's counsel explained the matter as follows:

*"I just took a notion in drawing that petition that a woman torn up as badly as she was had no business getting married. She would be a burden to somebody and that she ought not to get married and I stuck it in the original petition that she had lost the opportunity that is the final desire of every woman to marry and raise a family and, gentlemen, would she be willing to do it? Any woman in the condition she is in? I do not believe she would do it,* regardless of how she felt because we fellows who

have lived several years, along life's pathway, know that a wife must do her part if the thing runs well; if everything comes along all right, the wife must do her part. If she is sick and unable, or if for any reason she can't do her part, it is the man's duty to stick just the same, but if she can do her part, everything gets along lots better and a woman who can't do her part ought to face the facts and say to any prospective husband that they do not want to tie him down." (Italics ours.)

The evidence was sharply conflicting on the controlling issues. The verdict is for a large sum. We think the followng authorities require a holding by this court that the argument constitutes reversible error.

In Robbins v. Wynne, 44 S.W.(2d) 946, 947, opinion by Judge Critz, it was said:

"When, as in a case like this, the improper argument and circumstances surrounding it are undisputed, we think the issue of injury is purely a law question. We think, further, that when counsel goes outside the record and gives the jury information that is calculated to injure the other side, it is misconduct which must result in a reversal, unless it clearly and affirmatively appears that no injury has been done. * * *

"Counsel had wrongfully gone outside the record and imparted information to the jury that it should not have received in that manner, and no withdrawal he might make would render it possible for us to say beyond a reasonable doubt that no injury resulted. Also, we think the offending party should be held strictly accountable in matters of this kind." McClintic et al. v. J. D. Young Corp. (Tex. Com.App.) 66 S.W.(2d) 676; Gulf, C. & S. F. Ry. Co. v. Ballew et al. (Tex.Com.App.) 66 S.W.(2d) 659; West Texas Utilities Co. et al. v. Renner (Tex.Com.App.) 53 S. W.(2d) 451; Bell et al. v. Blackwell (Tex. Com.App.) 283 S.W. 765; City of Pampa v. Todd et ux. (Tex.Com.App.) 59 S.W.(2d) 114; Texas Indemnity Ins. Co. v. McCurry (Tex.Com.App.) 41 S.W.(2d) 215, 76 A. L.R. 760; Floyd v. Fidelity Union Cas. Co. et al. (Tex.Com.App.) 39 S.W.(2d) 1091; Regester et al. v. Lang (Tex.Com.App.) 49 S.W.(2d) 715; Pfeuffer et al. v. Haas et al. (Tex.Civ.App.) 55 S.W.(2d) 111; Williams et al. v. Rodocker (Tex.Civ.App.) 84 S.W. (2d) 556; Woodard v. Texas & P. Ry. Co., 126 Tex. 30, 86 S.W.(2d) 38.

The record in this case is unusually large. Appellant presents 60 assignments of error.

All assignments have been considered, those, the sustaining of which would require a rendition of the judgment, have been overruled. We see no necessity for discussing them further because the questions presented need not occur upon another trial.

Reversed and remanded.