## TEXAS EMPLOYERS' INS. ASS'N v. ROWELL.

### No. 1627.

Court of Civil Appeals of Texas. Eastland.

Feb. 26, 1937.

Rehearing Denied April 9, 1937.

Scarborough & Ely, of Abilene, for appellant.

Grisham Bros. and J. A. Lantz, all of Eastland, for appellee.

GRISSOM, Justice.

This is a workmen's compensation case. Rowell sued his employer's insurance carrier alleging that he was totally and permanently incapacitated as a result of a sunstroke or heat exhaustion on August 10, 1934. He contends that on said date shortly before quitting time he suffered a sunstroke or heat exhaustion while replacing a belt in the engine house. He was not supposed to work the following day. That he was sick from August 10th until August 25th at which time he returned to work and did the same work as previously until October 12th. When the well was practically completed, Rowell left for a business trip to the Rio Grande valley. About November 24, 1934, while walking about the streets of Eastland, he suffered a stroke of paralysis. At the time of the trial there was evidence that Rowell was suffering from paralysis, hardening of the arteries, high blood pressure, and heart trouble. It was his contention, which he undertook to establish by medical testimony, that his condition at the time of the trial was connected with and the result of the alleged sunstroke, or heat exhaustion, suffered by him while changing a belt on certain oil well drilling machinery on August 10th.

The case was submitted to a jury on special issues, all of which were answered

favorably to the plaintiff. Thereupon the court entered judgment for the plaintiff, appellee here, for total permanent disability.

Special issue No. 6 was as follows: "Do you find from a preponderance of the evidence that the plaintiff's condition of total incapacity, if any, is permanent?" Defendant's objection to the submission of said issue was as follows: "* * * for the reason that it does not confine the jury to the question as to whether or not the particular part of the incapacity, if any, of plaintiff which was produced and brought about by sun stroke or injury arising out of his employment, but permits the jury to find on the permanence of plaintiff's disability in general, even though the plaintiff may have, or may, in the future, recover from those particular ailments which may have produced or brought about the particular injury complained of in plaintiff's petition."

We think the issue was not subject to such objection. The jury in answer to a previous question found that plaintiff was totally incapacitated. The question here was whether the incapacity was permanent. The objection pertained to the question of the cause of permanent incapacity which the court could not properly add to the question asked. To have done so would, in effect, have caused the court in one issue to inquire whether the incapacity was permanent, and also whether the sunstroke would continue throughout the period of permanent incapacity as a producing cause thereof. The question as to duration of incapacity and the question as to the cause thereof do not inquire as to a group of facts constituting a single ultimate issue. Lumbermen's Reciprocal Ass'n v. Wilmoth (Tex.Com.App.) 12 S.W. (2d) 972, 973. In connection with the question generally, also see Texas Emp. Ins. Ass'n v. Horn (Tex.Civ.App.) 75 S.W. (2d) 301; Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72.

Appellant's proposition No. 2 is as follows: "It being controverted as to whether or not appellee sustained an injury, and also as to whether or not such injury, if any, was a result of heat exhaustion or sunstroke, it was error for the court to submit special issue No. 1, as follows: 'Do you find from a preponderance of the evidence that the plaintiff, H. Rowell, on or about the 10th day of August, 1934, sustained an injury as that term is

herein defined, as a result of a heat exhaustion or sunstroke? Answer Yes or No.' as against the exception of appellee to the effect that it was duplicitous as submitting both of such issues."

In Speer's Law on Special Issues at p. 128, it is said: "It is not always the case that the submittable issue consists of a single simple fact. It may consist of a primary fact *as limited or qualified* by some other fact consideration, yet on the whole be a single issue. In such case the one real issue can often be best submitted with the limiting or qualifying facts stated in connection with the one real issue to be submitted. * * * A grouping of facts necessary to present one ultimate issue is not a grouping of issues at all."

The issue as submitted was substantially in accord with the plaintiff's pleadings. Stated differently, the issue was, in effect, Did the plaintiff sustain the injury alleged? Stated as it was it avoided the mistake of referring the jury to plaintiff's pleadings. The primary fact inquired about was the existence of the injury. The finding of the jury of any injury other than that alleged would have been immaterial and its submission might have been subject to the objection that the question did not limit the inquiry to the kind of injury alleged. Hence the propriety, if not the necessity, of limiting and confining the inquiry to the character of injury alleged. It has often been held that, where an issue is composed of several component parts, or where it is necessary to limit, describe, or modify an issue, the rule against duplicity or multifariousness is not violated. The question submitted the issue pleaded.

We have concluded that the issue is not duplicitous. Panhandle & S. F. Ry. Co. v. Brown (Tex.Civ.App.) 74 S.W.(2d) 531, 535; Texas Emp. Ins. Ass'n v. Jones (Tex. Civ.App.) 70 S.W.(2d) 1014; Texas Emp. Ins. Ass'n v. Burnett (Tex.Civ.App.) 72 S. W.(2d) 952; City of Abilene v. Moore (Tex.Civ.App.) 12 S.W.(2d) 604; Fidelity Union Cas. Co. v. Cary (Tex.Civ.App.) 13 S.W.(2d) 993, reversed on other grounds (Tex.Com.App.) 25 S.W.(2d) 302; Wortham et al. v. Bull (Tex.Civ.App.) 19 S.W. (2d) 211; Texas Emp. Ins. Ass'n v. Pugh (Tex.Civ.App.) 57 S.W.(2d) 248; Texas Ind. Ins. Co. v. Holloway (Tex.Civ.App.) 30 S.W.(2d) 921, affirmed without reference to question (Tex.Com.App.) 40 S.W. (2d) 75; Texas Emp. Ins. Ass'n v. Pearson (Tex.Civ.App.) 67 S.W.(2d) 630; Tex-

as P. C. & O. Co. v. Grabner (Tex.Civ. App.) 10 S.W.(2d) 441; St. Louis, S. F. & T. Ry. Co. v. Wilson (Tex.Com.App.) 279 S.W. 808; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, 518; 41 Tex.Jur. § 276, p. 1107.

Appellant further contends that special issue No. 1 "assumes that the plaintiff had an attack of heat exhaustion or sun stroke, and is calculated to lead the jury to believe that the court is of the opinion that the plaintiff had suffered such an attack and is a comment upon the weight of the evidence." Such objection was timely made to the submission of said issue.

We do not believe the issue subject to such objection. Its submission was correct under the authorities heretofore cited.

■■ Argument of appellee's counsel in the closing address to the jury is complained of as follows:

"But, sirs, if you can give us a verdict on the preponderance of the testimony on *our issues*, we want it, and we are entitled to it. We will not ask you for bread, though you may be willing to give it, but at your hands and at the hands of your ·clients, sir, *we ask justice, and when we get it, we will have every question answered in the affirmative, except the last two* that the court instructs shall be answered otherwise." (Italics ours.)

Appellant contends that such argument constituted reversible error because it informed the jury of the effect of their answers and was an appeal to first find for appellee and then frame their answers accordingly. The court qualified the bill complaining of such argument showing that counsel for defendant in his argument used the following language:

"There is not any doubt in my mind but what that man is sick, and my heart goes out for him just as yours goes out for him. I can't see any man in distress and not have a profound sympathy for him, at no time, nowhere. If he asks me for a meal and I have got it, I will divide with him. That is always my idea of citizenship, but when you come to giving him other people's money, then it is a question of law predicated upon the facts, and deal with it as you find the facts to be. Not because he is sick, but as the truth exists. Let the truth prevail, and no man can be hurt."

And the court further qualified the bill to show that no objection was made to the argument and that the court was not asked to instruct the jury not to consider it.

The jury did answer all of the issues in the affirmative, except issue No. 10, which called for an answer in dollars and cents, and issues Nos. 12 and 13 ("the last two") which the court had directed should be answered more fully than by a simple yes or no, all of which issues were also answered favorably to appellee.

A portion of the quoted argument was plainly in response to argument of counsel for appellant, but the propriety of a reference to "our issues" and the further statement "we ask justice, and when we get it, we will have every question answered in the affirmative, except the last two that the court instructs shall be answered otherwise" is at least very doubtful.

Of course, counsel had the right to advise the jury how, from the evidence, he thought the questions should be answered. Counsel did not have the right to tell the jury the legal result of answering the questions in a specified manner and to appeal to the jury to so answer the issues as to accomplish "a result rather than to answer the issues truly as they find the facts to be from the evidence * * *." Behringer v. South Plains Coaches, Inc. (Tex.Com. App.) 13 S.W.(2d) 334, affirming (Tex.Civ. App.) 4 S.W.(2d) 1003. Also see McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213. Did counsel in telling the jury that his client would get justice when each question was answered in the affirmative except the last two (divorced as it was from any contention that the evidence required or justified such answers) have the effect of telling the jury that by so answering a judgment for plaintiff would result? If the argument had such effect, a reversal must follow. Fidelity Union Cas. Co. v. Cary (Tex.Com.App.) 25 S.W.(2d) 302. This is not a case where it can be presumed that intelligent jurors knew the legal effect of their answers. Such argument has been held to be reversible error if the argument is calculated to so inform the jury. Houston E. & W. T. Ry. Co. v. Sherman (Tex. Com.App.) 42 S.W.(2d) 241, 247; Clements v. Wright et ux. (Tex.Civ.App.) 47 S.W.(2d) 652, 653.

In Houston E. & W. T. Ry. Co. v. Sherman, supra, the argument complained of was "I beg of you gentlemen to help her (meaning the plaintiff) to keep them (meaning the children) in school, and beg

of you gentlemen to answer the first fourteen issues 'Yes' and 'Yes' and on down to the—until you get to number 15, in behalf of Mrs. Sherman and those seven children, and I want to beg of this jury to answer question No. 15 'No,' No. 16 'No,' No. 18 'No,' No. 19 'No,' No. 20 'No,' No. 21 'No,' No. 22 'No,' No. 23 'No.'" The Commission of Appeals, in an opinion approved by the Supreme Court said:

"In the instant case the jury were told to answer the questions in a certain way in order to help the plaintiff and keep her children in school; the plain inference being that, unless the questions were so answered, she would not be helped and her children would not be kept in school. We have reached the conclusion that such argument constitutes reversible error."

In Skipper v. Jackson (Tex.Civ.App.) 77 S.W.(2d) 917, 918, the following argument was considered: "Now, gentlemen of the jury, Mac told Jackson that he was entitled to that money, and that Skipper would have to pay it, and Skipper will have to pay it, because this jury of twelve of our good citizens will make him do it. Now, if you gentlemen want to see justice done and give this man, poor old man Jackson, the $2,500.00 that he worked hard for and send him back to Fort Worth to his wife and daughters and make their hearts glad, then you will answer the first question 'Yes,' the second question 'No,' and the third question 'Yes.' Answer them 'Yes,' 'No,' and 'Yes.'"

The court held that such argument was calculated to cause the jury to first agree on the result they wished to accomplish by their answers and then designedly form the said answers so as to accomplish such results, and that it had the effect of instructing the jury how to answer the issues submitted in order to return a verdict in favor of the appellee. The argument was held to be reversible error.

In Clements v. Wright, supra, it was held that argument that client's case was made out in the first six questions which counsel urged should be answered in the affirmative and that remaining questions should be answered in the negative was improper as telling the jury the effect of their verdict.

In Consolidated Underwriters v. Murphy (Tex.Civ.App.) 29 S.W.(2d) 831, 834, the following argument was assigned as error: "Gentlemen of the Jury, each and all of these questions 1, 2, and 3 you should answer 'yes,' and you will do so if you want to find what is just and right for this colored woman."

The court said: "The argument advising the jury as to the effect of their answers to the issues submitted, and advising them to answer the questions propounded in the affirmative, so that their verdict would favor his client, is, under the rule established by numerous decisions, reversible error."

Also see Morgan et al. v. Maunders et ux. (Tex.Civ.App.) 37 S.W.(2d) 791, 793.

■ In plaintiff's original petition, which was introduced in evidence, there was no allegation that the injury occurred in a belt house. After the institution of the suit, plaintiff made a written statement, introduced in evidence, in which he said he became overheated dressing a bit on the floor of the rig. In plaintiff's amended petition he, for the first time, alleged an injury from sunstroke while changing a belt in a metal inclosed belt house, and so testified on the trial of the case. There was no evidence to sustain counsel's statement hereafter italicized.

"I pause here to say something about this petition of ours. Listen! Mr. Scarborough told you what this law means. He didn't tell you that when the Board acts on a case of this sort, it is the duty of the lawyers to file a petition in twenty days, regardless of the man's health, whether he is able to confer with the lawyers or not. *We simply filed it to avoid the statute of twenty days. If we had not filed it they would have been in here pleading limitation, but we filed it just as quickly as we could marshal a few facts together. We didn't undertake to go into whether it was a bit trouble or belt trouble or what.* We said while he was doing his work it occurred. Why? Do I look like a fool? *Don't you know if I had known how it occurred I would have put it in?* Don't you know that a lawyer has a duty to consult with his client and find out what the facts are?" (Italics ours.)

The court qualified the bill to such argument as follows:

"* * * defendant's counsel in his argument to the jury, used the following language:

"The burden is on them to show they come within this act [Vernon's Ann.Civ.St. art. 8306 et seq.] You know just a few years ago, before the adoption of this act, if a man was working for another and

got injured, they had the defenses of contributory negligence, assumed risk and fellow-servant, and all that. As between the master and servant, where they carry this insurance, that has all been done away with, and the question is, 'Was this man injured in the course of his employment?' That is the only question. Not, Did he get sick on the job? * * *

"Now, what happened out there? They filed their petition in this case on the 21st day of February, 1935, and in that petition they did not say one word on God's earth about any belt or any work in the belt room. They never mentioned it. Not one word did they say. But they did say that in this amendment that they filed here yesterday. They did do that—it is in the pleadings, they now say this belt room was where the trouble occurred.

"Now, Bob is a good old fellow. He is not as mean as he looks, but he propounded interrogatories to the fellows that worked with Rowell, and then he got peeved at me because we sent them out to a notary, he didn't like that, but what difference does it make so long as they tell you what happened?

"And the further qualification that no objection was made by defendant's counsel to the argument complained of, and the court was not asked by defendant's counsel to instruct the jury not to consider said argument."

Argument of defendant's counsel in the second paragraph of the court's qualification to the bill was sustained by the evidence. It did not authorize a reply in which plaintiff's counsel, unsworn, testified, in effect, why the change was made in the pleadings.

In Maccabees v. Rector, 103 S.W.(2d) 232, decided by this court, February 12, 1937, we held the explanation of counsel made in argument to the jury, unsupported by evidence, as to why in his amended petition he omitted allegations in his original petition as to a certain element of damages to be error.

■ Complaint is made of the following argument in appellee's closing address to the jury:

"Gentlemen, you don't have to get out on a limb with these doctors' testimony. *Every lawyer in the land, including Dallas Scarborough, knows it is the most uncertain testimony that God Almighty ever permitted on earth. I wouldn't believe half of these insurance company doctors, if they were sworn on a stack of Bibles as high as heaven.*" (Italics ours.)

The bill to such argument was qualified by the court as follows:

"That the court does not say what the physicians' testimony showed; and the further qualification, that counsel for defendant discussed the testimony of the doctors who testified in the case, and argued to the jury, that the testimony of defendants' doctors was more reasonable than that of plaintiff, and that their testimony should be believed.

"And the further qualification that no objection was made by defendant's counsel to the argument complained of in this bill, and the court was not asked by defendant's counsel to instruct the jury not to consider said argument."

The qualification does not justify, as a reply, the last two sentences of the argument complained of. Three physicians testified for the defendant. Some of their testimony was disputed by the doctor who testified for appellee, but said witnesses for appellant were not impeached, and there was no testimony attacking the credibility of said witnesses. Plaintiff's counsel was not sworn and there was no testimony other than his as to the matters referred to by him. The appellant's defense was largely based on the testimony of the doctors referred to as "insurance company doctors" concerning whose testimony appellee's counsel stated he would not believe half of them "if they were sworn on a stack of Bibles as high as Heaven." In connection with this particular argument we call attention to the opinion of this court in Williams v. Rodocker, 84 S.W. (2d) 556, 563, in which it was said: "We conclude that the argument in which counsel, unsworn, testified, in effect, to the want of credibility of the witness Shelton was of a nature that it could not be rendered immaterial by objection and an instruction by the court to the jury not to consider it." Also see Southwestern Bell Tel. Co. v. Hardy (Tex.Civ.App.) 91 S.W.(2d) 1075, 1076, 1077; Guardian Securities Corp. v. Mahoney (Tex.Civ.App.) 49 S.W. (2d) 963, 967.

Complaint is made of the following argument by appellee's counsel in his closing address to the jury: "Further replying, I want to show this. I don't know whether you men have worked for any insurance company—I mean any oil company—or not, that has carried this workmen's com-

pensation insurance. But every man who has worked and has had a claim, and been forced to go into the courthouse, knows that the employer and the insurance company stand hand-in-hand together, in a fight like this."

The court instructed the jury not to consider such remarks.

Co-workers of appellee had testified in substance that they knew nothing of the alleged injury to the appellee, did not know that he ever became overheated or suffered a sunstroke, or became sick while employed as he alleged, and a member of the firm that employed appellee testified for the insurance company. Appellee contends that it is a matter of common knowledge that an employer's insurance rate is affected by the injuries sustained by his employees and compensation paid for such injuries and that, therefore, appellee's counsel had the right to argue that the appellee's employer who testified was an interested witness.

Defendant's counsel had previously in his argument said: "Do you think for one minute that anyone of these employees would come in here and swear against their fellow, if it was not the truth? Have they got any right to ask you to disbelieve their associates and give him a verdict when their associates say it isn't so?"

Appellant complains of the following argument by counsel for appellee in his closing address: "Why, they would have you believe, and this claim agent had him saying, that it was ventilated, and stuff like that, an old, sick man, taken down there, without the benefit of his lawyer, without anybody present to guide him, with an expert claim agent there. Let me tell you, if you get hurt going home this evening, be careful and make no statements to a claim agent, unless you read them three times and get a couple of neighbors that are unbiased to witness them. Where is that efficient claim agent that rounded them up in Hoffman's office, like a bunch of cattle, and took their statements like he wanted them?"

This argument was not excepted to. Appellant contends that it constitutes an appeal to prejudice and the personal experience of jurors and constitutes unsupported charges against appellant of improperly influencing witnesses.

Complaint is also made of the following argument: "I want to be fair, I want to be true; but I believe that a claim agent that can and does go around fixing up testimony, does more to stand in the way of justice, than any other individual in the court house, or that has anything to do with the court house, today."

We think it is not necessary to pass on the argument except the first three complaints thereof herein discussed. We have concluded that under the decisions of our Supreme Court and others cited and those cited in Maccabees v. Rector, supra, that reversible error is shown.

The judgment is reversed and the cause remanded.