## MORRISON v. SMITH.

### No. 1983.

Court of Civil Appeals of Texas. Eastland.

March 8, 1940.

Scarborough & Ely, of Abilene, for appellant.

Ernest W. Wilson and Thos. E. Hayden, Jr., both of Abilene, for appellee.

LESLIE, Chief Justice.

Mrs. Susan B. Smith, appellee, instituted this suit against J. F. Morrison, operating as Southwestern Peanut Company, appellant, to recover for personal injuries and property damage growing out of the collision of an automobile driven by her with the defendant's truck. Both parties were traveling in a westerly direction on the Bankhead Highway when the accident occurred between Baird and Clyde in Callahan County. The appellee charged various acts of negligence, etc., and the appellant answered by general denial, pleas of contributory negligence, etc.

In the trial it was, in substance, the theory of the appellant that his truck had turned to the left of the road to pass another car and that after it had so turned and was in the act of passing such car, the appellee, driving at an excessive rate of speed, undertook to pass the truck and in doing so, drove into the truck, causing her car to turn over after careening across the road in front of the truck. The appellant further contended that no horn was blown or signal given by the appellee when she attempted to pass the truck. On the other hand, the appellee's contentions and testimony were to the contrary. She charged the appellant with turning suddenly to the left and striking her car and that he failed to give any signal or notice that he was about to turn his car to the left. Appellant's testimony is also to the effect that his truck and trailer were entirely on the left side of the road, passing the car on his right when the appellee, somewhat on the shoulder of the highway, undertook to pass the appellant's truck.

In answer to special issues the jury found the appellant guilty of negligence: (1) in turning the truck to the left immediately before the collision "without first seeing that there was sufficient space for such movement * * * without striking plaintiff's car"; (2) failing "to give a visible signal of his intention to turn to the left immediately before he turned to the left;"

(3) failing "to give an audible sign of his intention to turn to the left" etc.; (4) in failing "to keep a proper lookout for other cars on the highway immediately before and at the time of the collision."

The jury acquitted the appellee of contributory negligence: (1) in attempting to pass the truck while it was passing another car on the highway, (2) in driving at an excessive rate of speed.

The jury also found that the collision did not result from an unavoidable accident.

The first assignments of error complain of the court's failure to grant a new trial on the ground of newly discovered evidence of the witness Ferguson who is alleged to have seen the accident from a nearby point in a field; and the second group of assignments assert that the court erred in not granting a new trial because of the inflammatory remarks of the appellee's counsel in telling the jury in his closing argument that the appellant's counsel was "buying, hiring and bringing witnesses" etc. The propositions relating to newly discovered evidence present a rather close question but since we find that the judgment must be reversed on other points we have concluded not to base our decision on any particular view of the first group of assignments. If we are correct in the conclusions presently to be stated, the question of newly discovered evidence becomes immaterial and will not arise upon another trial.

Appellant's proposition 2 is addressed to the ruling of the court concerning the following remarks of appellee's counsel: "Let's get another one. Suppose it happened like he said, with her out on the shoulder; she would have to have overturned to come in there. She couldn't do it. Off in the borrow pit she would go. They claim that was this man here (indicating) but Davis hasn't got them here. It wasn't Mr. Morrison's duty. He was the man paying their way here. I wonder what they told him when he struck this man. It wasn't Mr. Morrison's duty. It was Davis's duty, because he was buying, hiring and bringing witnesses here * * *."

Proposition 3 is addressed to said attorney's remarks used at the same time and in practically the same connection. They are as follows: "This other testimony—let's see their testimony,—that's Wilcoxen and Young, the parties that Mr. Davis Scarborough paid their way up here. I do not know how they employed Mr. Scarborough in this case—whether it was like the lawyer who will charge you so much if you furnish the testimony, and so much if he furnishes the testimony. I don't know how they arrive at that, but anyhow Mr. Scarborough paid their way up here. I don't know how he did that. I have never seen a lawyer with that much money. Anyway, he volunteered that statement * * *."

Although the trial court instructed the jury to disregard the above remarks, such argument is urged as reversible error for the following reasons: (1) Such comments amounting to impeachment testimony by counsel (who was not sworn) with respect to the credibility of material witnesses offered by appellant, and whose testimony bore upon vital issues in the case. (2) Such comment constituted a direct statement of fact by counsel to the effect that the appellant's counsel had bought and hired witnesses for the appellant. (3) Such remarks were not in reply to any argument of appellee's counsel or warranted by the testimony. (4) That such statements by appellee's counsel amounting to a charge that the appellant's counsel had been guilty of subornation of perjury, and (5) that by such remarks and observations the attorney for appellee undertook to break down testimony of witnesses Wilcoxen and Young upon whose testimony (in connection with that of the truck driver) appellant relied to establish the acts of contributory negligence charged to the appellee, etc.

On the trial the appellant offered the testimony of witnesses Young and Wilcoxen who had been following the truck for sometime and who at the moment of the accident were about 75 yards behind the truck. They testified, in substance, that the Smith car was about 50 yards behind the truck and 25 yards in advance of their car when the truck began pulling out to the left to pass the car in front of it. That appellee did not pull to the "right hand side of the highway" after passing them, that "she just stayed on the left hand side of the highway"; that "about the time she got to this truck, * * * the truck had started around another car, and whenever she started around him * * * she hit his [rear left] duals on his truck, and when she did, it threw the back end of her car around that way (indicating). She went

plumb around his truck and turned over." That the truck and the car (it was passing) were side by side when the Smith car "got up to that point."

Wilcoxen also testified that the appellee was traveling 50 or 60 miles an hour when it passed the car in which he was driving. Young testified the appellee's car was traveling "plenty fast." Both witnesses testified their own car was running about 35 miles an hour. One of these witnesses also testified that he never heard Mrs. Smith blow her horn or give any such signal. The truck driver testified that no such signals or warnings were heard by him.

The findings of the jury on the material issues have been set out above. This much of the testimony has been stated to show its conflicting nature and the closeness of the issues drawn. In other words, the jury adopted the appellee's theory of the case to the total exclusion of appellant's theory of what occurred. Evidently it disregarded the testimony of Wilcoxen and Young.

Further, the testimony was undisputed that appellant had agreed to pay Wilcoxen and Young for the time consumed, as well as expenses, in attending court to testify in person. Appellant made no effort to conceal these facts, nor does it appear that either the appellant or appellee considered that the payment of such items of expenses and for time was in any measure improper. That is doubtless the correct view of such acts and it is believed that the presence of witnesses testifying in open court before the judge and jurors is preferable to the production of their testimony by deposition.

Upon the foregoing background of the present litigation we are to determine whether or not the argument complained of was material and prejudicial. We think we are not without authority in this state to guide us to a correct answer to that question. The opinion in Northern Texas Traction Co. v. Nicholson, Tex.Civ.App., 188 S.W. 1028, 1032, is a well-reasoned opinion upon substantially the same state of facts and believed to be well in point here. That was a case in which certain witnesses were induced to attend court and testify upon the understanding that they were to be reimbursed "in the ratio of their earnings for the time they were in attendance upon court as witnesses for defendant."

The plaintiff's attorney discussed these witnesses and their testimony as follows:

"Now, about these women, gentlemen of the jury, we can't believe their testimony. They are bought and paid for, as admitted by their claim agent, Douglass."

In discussing the assignment directed to such argument the court in that case spoke as follows: "One of the limitations of counsel's right is, however, that he may not state facts not supported by or inferable from the evidence in the case under discussion. Winnsboro Cotton Oil Co. v. Carson [Tex.Civ.App.], 185 S.W. 1002. That counsel's statement that defendant's claim agent 'had bought and paid for' certain witnesses, and that the claim agent admitted that fact, and as a consequence could not be believed, is not fairly supported by or inferable from the evidence is in our opinion, clear. The claim agent testified, in substance, that he had agreed to pay the witnesses while in attendance upon court in the ratio of what they were earning. The litigation involved a private controversy between the parties, and there is much reason why the witnesses would not have been willing to quit their employment and sacrifice their earnings in order to testify in a matter in which they had no interest, and we see no impropriety in the arrangement, or any justification or support in the evidence for the deduction drawn. It is true that the witnesses could have been forced to attend by tendering their fees, but such a course is obviously beset by many inconveniences and difficulties tending to prevent a full development of the facts. Of course, had any circumstance or fact been proven that would have justified the innuendo of perjury, the argument would have been legitimate; but, in our opinion, that fact is not deducible from the agreement to reimburse the women for the time lost."

In this same case it was also contended that the error, if any, was harmless in that the amount of the verdict was not excessive. In the instant case the judgment is for $4894.65. The court reviewed the testimony in said case and in passing upon the question raised further held: "It was the servants of the defendant in the one instance who testified concerning Mrs. Nicholson's actions in alighting from the car and who counsel argued did not have to be believed *because they were servants*, while in the other it was the women referred to by counsel as having been *bought and paid for* by the claim agent who testified to the facts tending to prove that Mrs. Nicholson

was malingering. The evidence so standing, can it be said that the error was harmless because only $5,000 was allowed for a fractured bone? As indicated, we do not think so. The evidence was sharply conflicting and evenly divided on both the issue of the fall from the car and Mrs. Nicholson's subsequent simulated illness. To discredit the servants of defendant and the women witnesses was but to strengthen the evidence of Mr. and Mrs. Nicholson and their daughter, on the issue of the accident, and that of her other witnesses on her subsequent illness. Such was the holding in Ft. W. Belt Ry. Co. v. Johnson, 59 Tex.Civ. App. 105, 125 S.W. [387] 389. And in this case, as was said in the case cited, no effort was made to impeach the witnesses sought to be discredited by the argument, nor is any conflict, contradiction, or inherent improbability shown in their account of the accident, and as a consequence no justification for the charges." (Italics ours)

That opinion is believed to fit the facts of the instant case. We believe that it ascribes the proper legal effect and consequences to the argument here complained of. The record before us no more warrants the inference and conclusions embraced in the argument complained of than did the record passed upon in the Nicholson case.

 It is unnecessary to lengthen the opinion by a discussion of the authorities which we think definitely condemn such argument as prejudicial error requiring the reversal of the judgment of the trial court, even though that court attempts to remove the harm by instruction similar to that given in the instant case. However, we cite the following authorities which, we think, warrant and require the disposition made of this appeal. Texas Emp. Ins. Ass'n v. Rowell, Tex.Civ.App., 104 S.W.2d 613; Williams v. Rodocker, Tex.Civ.App., 84 S.W.2d 556; Robbins v. Wynne, Tex. Com.App., 44 S.W.2d 946; Woodard v. Texas & P. Ry. Co., 126 Tex. 30, 86 S.W. 2d 38; S. H. Kress & Co. v. Lindley et al., Tex.Civ.App., 46 S.W.2d 379; Texas & N. O. Ry. Co. v. Owens, Tex.Civ.App., 54 S. W.2d 848; Southwestern Bell Telephone Co. v. Hardy, Tex.Civ.App., 91 S.W.2d 1075; Gulf T. & W. Ry. Co. v. Culver, Tex.Civ.App., 168 S.W. 514; Guardian Securities Corp. v. Mahoney, Tex.Civ.App., 49 S.W.2d 963.

Argument which imputes perjury to witnesses and subornation of perjury to counsel of adverse litigant is not to be taken lightly when it is not sustained by the testimony or reasonable inferences therefrom. There is nothing in the record, taken as a whole, to excuse the argument complained of, or to render it harmless in an affirmative way. There is no better statement of the rule requiring a reversal of the judgment when such error is committed as well as the reason for such rule than that stated in Bell v. Blackwell, Tex.Com.App., 283 S.W. 765. Certainly there is in the instant case a reasonable doubt of the harmful effect of such argument. Texas Indemnity Ins. Co. v. McCurry, Tex.Com. App., 41 S.W.2d 215, 78 A.L.R. 760.

In appellee's brief it is insisted that the bills of exception presenting the matter of attorney's objectionable argument are insufficient because they do not disclose either that there was no evidence to justify the argument, or that there was no argument on the part of the opposing counsel to provoke the same. The authorities relied upon to sustain such proposition have been overruled by the opinion of our Supreme Court in West Texas Utilities Co. v. Renner, (appealed from this court) 53 S.W. 2d 451.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.