## SOUTHERN UNDERWRITERS v. THOMPSON.

### No. 3803.

Court of Civil Appeals of Texas. El Paso.

March 16, 1939.

Rehearing Denied April 13, 1939.

Benbow, Saunders & Holliday, Henry D. Akin, and Claude Williams, all of Dallas, for plaintiff in error.

J. B. Cotten and John J. Watts, both of Crane, and R. E. Cunningham, of El Paso, for defendant in error.

NEALON, Chief Justice.

Tommie Thompson, defendant in error in this Court and plaintiff in the District Court, sued plaintiff in error, The South-

ern Underwriters, workmen's compensation insurance carrier for C. B. Rains, claiming that he had sustained certain described personal injuries while engaged in the course of his employment as an employee of C. B. Rains. Defendant in error alleged that he was totally and permanently disabled. The case was tried to a jury which, in response to special issues, found that Thompson, while working as an employee of Cecil B. Rains in the course of his employment on or about June 23, 1937, sustained an accidental personal injury as alleged in his petition; that as a result of his injuries he sustained total and permanent incapacity and that manifest hardship and injustice would result unless he were awarded his compensation in a lump sum. The jury found that an average daily wage fair and just to plaintiff and defendant should be $6 a day. The court awarded judgment in favor of Thompson and against plaintiff in error in the total sum of $6,825, which would be an allowance of total permanent disability at the rate of $20 per week for a period of four hundred weeks after deducting the discount permitted by law when compensation is paid in a lump sum. One-third of the judgment was awarded to plaintiff's attorneys. From this judgment plaintiff in error prosecutes this writ of error.

### Opinion

The brief of plaintiff in error contains eighty-three assignments of error. Twenty-six propositions are urged. We shall discuss first those that we think should control our action in this proceeding.

Several portions of the closing argument of the attorney for defendant in error are challenged as introducing error into the case. By the eighteenth proposition the following argument of counsel for defendant in error is challenged: "He talks about the fact that he collected money twice before; well, they paid him off, and the companies that paid him must have thought that he was entitled to it, but he is not satisfied with trying to keep you from making his company live up to the written contract, he wants to come into court and slander and blacken and call me a scoundrel and call him an extortioner. No, we can't bring you and your insurance company in the court and put you on trial, and *I wonder how many times you have kept somebody that is entitled to have the money from having it.*

*We don't have them down here, and I am not saying that they ever done it, not saying that they have ever, but the jury doesn't know, either,* about the facts of that other case."

By the twentieth assignment the following argument of counsel for defendant in error is attacked: "Oh, yes, he criticizes him for hiring a lawyer. Well, now, he worked in the oil field all his life, and how are you going to make the insurance companies live up to their contract if you don't hire somebody that knows how to do it, *and anybody that worked in the oil field must hire a lawyer to collect the insurance that is justly due him.*"

We think that the objections to both arguments are valid. Each of them is in the nature of a statement to the jury that the Insurance Company makes a practice of refusing to pay just claims unless compelled to do so. In the first quotation the expression is used by counsel: "I wonder how many times you (meaning counsel for defendant) have kept somebody that is entitled to have the money from having it." This followed immediately after a statement that counsel was "not satisfied with trying to keep you from making his Company live up to the written contract," and the further statement, evidently directed at counsel, "No, we can't bring you and your insurance company into court and put you on trial," etc. The second quotation contains the positive direct statement, "and anybody that worked in the oil field must hire a lawyer to collect the insurance that is justly due him." Both statements are in the nature of impeaching character testimony. We cannot say that the jury may not have thought that counsel had peculiar knowledge of the policies of the defendant company and therefore have been influenced by his statements. Harsh as were the strictures of defendant's counsel which it is claimed provoked the utterances, we think they did not constitute a justification of the arguments quoted. They were limited to a criticism of alleged conduct of plaintiff and his counsel in the case then on trial. Under the strict rule approved by the Supreme Court in Robbins v. Wynne, Tex.Com. App., 44 S.W.2d 946, also declared in Texas Indemnity Ins. Co. v. McCurry, Tex. Com.App., 41 S.W.2d 215, 78 A.L.R. 760, and adhered to in Woodard v. Texas & P. R. Co., 126 Tex. 30, 86 S.W.2d 38, we must hold that the making of these argu-

ments introduced reversible error into the case.

By its twenty-first assignment plaintiff in error urges that error was introduced into the case by the use of the following argument by counsel for plaintiff: "I ask you to compel this insurance company to do what the evidence in this case demands they do, and that is to pay the compensation they agreed with Cecil Rains they would pay to his employees." We think the assignment should be sustained. This is a direct appeal to the jury to reach a verdict in favor of plaintiff and against defendant and is argument of a character not permitted in a case tried upon special issues. The function of a jury in such a trial is to state the facts found in response to questions asked, while the effect of the argument is to ask the jury to frame its findings in view of a result to be obtained, provided the jury thinks that the Insurance Company should pay. Since the duty of the jury is to make correct answers to interrogatories regardless of the effect such answers may have upon the result, an argument phrased as the one quoted is highly improper and constitutes reversible error.

We find no error in the manner in which special issue No. 15 was submitted, and overrule the assignments complaining thereof.

Plaintiff in error complains of the form of special issue No. 9, which submitted the issue of partial disability in the following language: "Do you find from a preponderance of the evidence that the plaintiff has sustained partial incapacity as a natural result of said accidental personal injury, if any, of date on or about June 23rd, 1937?" There is no merit in this contention. Assignments attacking the form of this submission are therefore overruled. Wright v. Traders & General Ins. Co., Tex.Com.App., 123 S.W.2d 314; Southern Underwriters v. Wheeler, Tex. Com.App., 123 S.W.2d 340.

It is also asserted by plaintiff in error that the court erred in the manner in which it submitted special issue No. 1. That issue read as follows: "Do you find from a preponderance of the evidence that the plaintiff, Tommie Thompson, sustained an accidental personal injury as alleged in his petition by him on or about the 23rd day of June, 1937? Answer Yes or No." Upon another trial we suggest that this issue be so framed as to confine the jury to consideration of allegations that are supported by evidence. Texas Emp. Ins. Ass'n v. Hamor, Tex.Civ.App., 97 S. S.W.2d 1041; Traders & Gen. Ins. Co. v. Weatherford, Tex.Civ.App., 124 S.W.2d 423, at page 430; Traders & Gen. Ins. Co. v. Garry, Tex.Civ.App., 118 S.W.2d 340, and cases there cited; Southern Pine Lbr. Co. v. Whiteman, Tex.Civ.App., 104 S.W.2d 635.

Plaintiff in error challenges the failure of the trial court to instruct the jury that if the plaintiff was in a state of intoxication at the time of his injury he could not be in the course of his employment. By special issue No. 22 the court inquired of the jury as to whether it found from a preponderance of the evidence that at the time of the accident plaintiff was not in a state of intoxication. The jury answered that he was not. The assignment referred to is overruled.

By various propositions plaintiff in error challenges the admissibility of statements made by Cecil B. Rains to Tommie Thompson. Rains was killed in the accident in which Thompson was injured. The evidence has reference to the oral contract of employment alleged to have been entered into between Thompson and Rains. The "dead-man" statute, R.C.S. Art. 3716, is invoked by plaintiff in error. It has no application. The suit is against an insurer and is not by or against an executor or administrator, guardian or heirs or legal representatives of Rains.

Likewise, error is charged on account of the admission of testimony of Mrs. Enyart and Ray Blackwell as to statements made by Rains with respect to employing Thompson. As to Mrs. Enyart's testimony, it is sufficient to say that it was admissible as part of the res gestae, it appearing that it was a statement to the effect that Rains was changing his crew and taking plaintiff out "on the job," and desired to know if witness, who was the manager of a hotel, could take care of him. The evidence was admissible, upon the theory that it was made in the course of insured's business, relating as it did to securing hotel accommodations for his employees, and was contemporaneous with insured's acts in this respect, and served to characterize the relation between him and plaintiff which made his request to Mrs. Enyart a natural one.

The question of the admissibility of Blackwell's evidence is a more difficult one. Apparently the evidence bore upon the issue made as to whether Thompson was in the employ of Rains just prior to the time that Thompson was injured. Rains was dead at the time of trial. The contention of Thompson is that he was employed by Rains under a parol contract. He told of no other person who was present at the time the contract was entered into. He was entitled to prove by competent evidence any circumstance which tended to show that the relation of master and servant was in existence. We are aware of the rule that a mere narrative of past events is not admissible in evidence. However, we think that there is more than a mere narrative involved here. Blackwell was seeking employment from Rains. Thompson was in the company of Rains, although not present when the conversation testified about occurred. Rains told Blackwell that he had employed Thompson. Blackwell also testified that Rains, in the presence of witness, told Thompson "to get the checks and stayed in the booth and endorsed them and then had given the checks back to Thompson and told him to give them to the boys when he got to the well—it was pay day." We have no doubt that this latter part of the testimony is admissible. And since the statement with respect to having employed Thompson was made in apparent contemporaneous explanation of their association at the time, and at a time when Rains was discussing his business affairs with the witness as a result of Blackwell's application for a job, we think the earlier statement was likewise admissible.

From the view we take of this case it is unnecessary to discuss other assignments urged.

On account of the errors discussed the judgment of the District Court is reversed and the cause is remanded.