UNITED STATES FIDELITY &
GUARANTY CO.

v.

LEWIS.

No. 6673.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 25, 1954.

Rehearing Denied March 25, 1954.

Ramey, Calhoun, Brelsford & Hull, Jack W. Flock, Tyler, Curtis White, Dallas, for appellant.

White & Yarborough, Dallas, for appellee.

FANNING, Justice.

This is a compensation case. Appellee was injured October 5, 1945 and on January 4, 1946 executed the Industrial Accident Board's standard form of final compensation settlement receipt. Pertinent portions of said receipt are as follows:

"Received of United States Fidelity & Guaranty Company the sum of Thirty-three Dollars and Forty-two Cents ($33.42), making in all, with weekly payments already received by me, the total sum of Thirty-three Dollars and Forty-two Cents ($33.42), *in final settlement and satisfaction of all claims for compensation subject to review as provided by law,* on account of injuries suffered by E. L. Lewis on or about the 5th day of October, 1945, while in the employ of Campbell & Kay.

"I returned to work on the 25th day of October, 1945, at a wage of (same as before injury) per week." (Emphasis added.)

Appellee's claim apparently was in a dormant state before the Board for more than four years, for on Sept. 12, 1951 the Board rendered an award denying appellee's claim and appellee appealed to the trial court. The jury found total disability for 104 weeks at the compensation rate of $18 per week and judgment was accordingly for $1,872 less a credit of $33.42.

Appellant complains of the refusal of the trial court to admit in evidence the final compensation settlement receipt. Plaintiff's attorney in open court and before the jury admitted that appellant paid E. L. Lewis $33.42 by reason of the injury received on October 5, 1945, and also that E. L. Lewis returned to work for Campbell & Kay on the 25th day of October, 1945, at a wage per week the same as before he was injured on October 5, 1945. The court also instructed the jury that they would take as true such admission. Said receipt was never approved by the Industrial Accident Board. A settlement between the insurer and the insured without the approval of the Industrial Accident Board is void and cannot be enforced in the courts, nor

can it form the basis of a plea in bar of recovery in a cause of action by the injured employee against the insurance carrier. 45 Tex.Jur., p. 699; and a "compromise settlement agreement" which has not been approved by the Board is not admissible in evidence. Brannam v. Texas Employers Ins. Ass'n, Tex.Sup., 248 S.W.2d 118. Cases cited by appellant hold that various statements, affidavits and claim papers filed by claimants before the Industrial Accident Board are admissible in evidence but none of these instruments purport to be a "compromise settlement agreement" or a "final compensation settlement receipt." Also, attorney for appellant, by cross-examination of appellee, proved up the facts admitted by counsel for appellee. We overrule appellant's point on this matter.

■ Appellant also complains of the refusal of the trial court to admit in evidence the pleadings and judgments in two other compensation cases wherein appellee collected compensation from Texas Employers Insurance Association, for injuries received in February, 1949 and in October, 1949, which injuries, however, were to different portions of appellee's body than the injuries sustained on October 5, 1945. Plaintiff sought recovery for 160 weeks compensation for the injury sued on in this suit and the subsequent injuries in February 1949 and in October 1949 were more than 160 weeks after October 5, 1945. The trial court, however, permitted appellant's attorney to fully examine appellee (over the objection of appellee's counsel) with respect to the nature and extent of these subsequent injuries, the amounts he received, etc., and also permitted appellant to introduce in evidence a written statement of appellee concerning some of these injuries which is in the record. We overrule appellant's points with respect to this matter.

■ Appellant presents nine points complaining of the arguments of appellee's counsel. In two of these arguments pertinent objections were overruled and requests for the court to withdraw from the jury were denied by the court. The first of these was as follows:

"Now, gentlemen, the Negro, his appearance and attitude and all struck me that the Negro was telling you facts. He didn't say I didn't go back to Campbell & Kay; he didn't say I didn't try these other jobs. He said I didn't go back to Campbell & Kay until three weeks after, and then, he said he did. I admitted he did, but he couldn't stay on there and work. They say that later, in 1949, he got some other injuries and got paid. Gentlemen, I tell you one thing for certain, United States Fidelity & Guaranty Company didn't do the paying. It was Texas Employers' Insurance Association, and if it had been United States Fidelity & Guaranty Company you would probably have had an entirely different proposition."

"Thereafter the following proceedings were had:

" 'Mr. White: Object. That is purely speculative, highly prejudicial and outside of the record. We ask the court to instruct the jury not to consider the argument of counsel.

" 'The Court: Let the exceptions be noted. Proceed.' "

The above argument contrasts appellant and another insurance company as to the manner in which they pay claims. Such a contrast had no proper place in this lawsuit. Also we think the above argument is subject to the interpretation that Texas Employers Insurance Association would pay their just claims and that the defendant probably would not. The case of Southern Underwriters v. Thompson, Tex.Civ.App., 127 S.W.2d 389 (dism. agr.), held that unjustified arguments to the jury to the effect that a defendant insurance company made a practice of refusing to pay its just claims unless compelled to do so consituted reversible error. While the argument here is not as strong and direct as the argument in the Southern Underwriters case, supra, we do think that this argument was not justified by anything in the record in this case, improper and prejudicial to the defendant.

■ The second of these arguments was as follows:

"Here is a statement of Mr. White's which is an effort to muddy the water, taken by another insurance company. There's Lewis walking on that walking stick—here is the statement Mr. White gets from somebody else and he asked the woman, kept on asking her on and on; shows he is unfair; kept on and on asking that woman here—"

"Thereafter the following proceedings occurred:

" 'Mr. White: Object that I am unfair. The record doesn't justify it, an assault on counsel in an effort to get the jury to consider the "tiff" between counsel rather than facts. We say the jury should be instructed not to consider that.

" 'The Court: Let the exceptions be noted.' "

The cross-examination of Lewis' wife is set out in the statement of facts and we do not perceive therefrom that counsel for appellant in exercising his right of cross-examination was unfair. Unwarranted criticism or censure of opposing counsel has been repeatedly condemned by our courts. We think the trial court should have sustained appellant's objection to this argument and should have further instructed the jury not to consider same.

█ The other seven arguments complained of were arguments to which pertinent objections were sustained and/or certain instructions of varying kinds were given by the court to the jury. The following occurred with reference to the argument complained of in point four:

"I haven't heard anybody say that he was able to work during that period of over two years, and don't you know if he had been able to work that this insurance company that is running around to see other insurance companies, to their offices and get their private record—go chewing around like that—don't you know if he had been able to work, they would have drug it in. They have and had the facilities to do it, I guess. What did he do? After Dr. Marshall— the insurance company is furnishing him, and the defendant is furnishing him here at $75.00 a throw. I didn't see any other doctor; they said they were going to bring two."

"Thereafter the following proceedings were had:

" 'Mr. White; Don't believe that is in the record and we object to that argument, if the court please.

" 'Mr. Yarborough: If it is not, I withdraw it.

" 'The Court: Anything beyond the record, gentlemen, is withdrawn from your consideration.

" 'Mr. Yarborough: They said it right over there (indicating).

" 'Mr. White: Then if they said right over there, it is not in the record.

" 'Mr. Yarborough: Withdraw the remark.

" 'Mr. White: We ask the court to instruct the jury not to consider it.

" 'Mr. Yarborough: I insist—they said it right over there.

" 'The Court: Any statement made beyond the record, gentlemen, you will not consider. Anything in the record, counsel has the right to argue. Anything beyond, do not consider, gentlemen.

" 'Mr. Flock: Object to the last statement, unsworn testimony before the jury, and we ask the court to withdraw that from the consideration of the jury.

" 'The Court: Any statement made beyond the record is withdrawn from your consideration, and this is withdrawn.' "

We quote from the court's qualification of said bill of exception, as follows: "When the panel from which the jury was selected was examined, and in the presence and hearing of the entire panel, counsel were asked how long it would take to try this case. This was asked so that the other jurors could be excused until some succeeding day of the term of the court. Defendant's counsel stated that he had one

doctor to testify and probably another—that the case would be short."

We think the above type of argument is improper. See the following cases: Alvey v. Goforth, Tex.Civ.App., 263 S.W.2d 313; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Morgan v. Maunders, Tex.Civ. App., 37 S.W.2d 791 (error dism.); Service Mutual Ins. Co. v. Blain, Tex.Civ.App., 135 S.W.2d 745 (writ dis.).

■ With respect to the argument complained of in point ten, the following occurred:

" 'Gentlemen, the United States Fidelity & Guaranty Company paid him $33.42 for a lick in the side that the doctor said broke blood vessels loose inside of him, broke blood vessels inside of him. To their idea of thinking, that is worth $33.42.

" 'They even say, "We paid him three weeks." His compensation rate is $18.00 a week—.' "

"Thereafter the following proceedings were had:

" 'Mr. White: He is arguing to the jury a question of law about the adequacy of the payments and making improper argument because—for two reasons:

" '1—Arguing the law to the jury.

" '2—He is arguing the matter for three weeks was inadequate, when as a matter of fact, it was adequate and the amount owned under the compensation law. We move the jury be instructed not to consider it.

" 'Mr. Yarborough: Will you take this time out?

" 'Mr. Yarborough: This testimony is wholly inadmissible. Mr. White's testimony is wrong.

" 'The Court: Keep within the record. Anything beyond the record is withdrawn from your consideration.

" 'Mr. Yarborough: Will you give me the additional time your Honor?

" 'The Court: Just three-fourths of a minute, but you may have it.

\*      \*      \*      \*      \*      \*

" 'Mr. Yarborough: Mr. White told you that Special Issue No. 15 should be answered 30%; 60% is $18.00 and he argued to you they paid three weeks—three times $18.00 is $54.00—

" 'Mr. White: This is improper and we make the same objection as made before. It is an improper calculation on his part; not correct as a matter of law and we ask that the jury be instructed not to consider it.

" 'The Court: Gentlemen, you will not consider anything not within the record. Keep within the record, counsel.' "

This argument was to the effect that since appellee had been off work for three weeks and his compensation rate was $18, appellant should have paid him $54 instead of $33.42 for the three weeks—the inference being that appellant had not paid appellee all that he was entitled to for the three week period that appellant had recognized that he was disabled. For the first week of disability, unless a compensation claimant is disabled for four weeks, no compensation is due, sec. 6, article 8306, Vernon's Ann.Civ.St. It was stipulated by counsel for appellee that after Lewis was injured on October 5, 1945, he returned to work for his employer on October 25, 1945, at a weekly wage the same as before he was injured. Deducting 7 days from 20 leaves 13 days. Lewis' daily wage was $2.57 and 13 x 2.57 is $33.41, and $33.42 is the amount of compensation that appellant paid and Lewis accepted for the 20 day period as shown in the written final compensation settlement receipt which Lewis signed. We think it was improper for counsel for appellee to tell the jury twice over objection that appellant should have paid $54 instead of $33.42, as we think that this is in effect arguing a misleading and erroneous proposition of law to the jury.

■ With respect to the argument complained of in point eleven the following occurred:

"I submit to you, gentlemen, that E. L. Lewis is entitled, under this evidence, which is clear and positive and not one word from anybody who was on any job where he worked said he was able to do the work; not one word from anybody who said he did work for Campbell & Kay more than two or three weeks before the two years was up; absolutely he is entitled to your verdict in this lawsuit.

*   *   *   *   *   *

" 'Mr. White: Object to counsel saying he is entitled to a verdict. This is improper.

" 'Mr. Yarborough: Withdraw it, Your Honor—

" 'Mr. White: That is improper because neither side is entitled to a verdict. The jury should answer the issues in accordance with the evidence regardless of who might be entitled to a verdict.

" 'The Court: The last statement is withdrawn from your consideration, gentlemen of the jury.

" 'Mr. Yarborough: I withdraw that statement and say the first six issues should be answered yes, the next, No. 7 as to number of weeks of total incapacity under this evidence, in my opinion, should be answered 160.' "

We think it is improper argument for counsel to tell the jury that his client is entitled to a verdict. Texas Employers' Insurance Association v. Phillips, Tex.Civ. App., 62 S.W.2d 313 (writ dis.); McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213 (opinion adopted by the Supreme Court).

█ With respect to the argument complained of in appellant's eighth point the following occurred:

" 'As a matter of fact, he didn't recall where they got his signature; his wife wrote his name with him putting an X-mark, I kept pressing him as to when or where and finally he said I was there. I didn't even know him at the time at all—'

"Thereafter the following proceedings were had:

" 'Mr. White: Object to his statement that he didn't know him. That is outside of the record.

" 'Mr. Yarborough: We think it is in the record, your Honor.

" 'The Court: Stay within the record.' "

Appellee first testified that he thought Donald Yarborough was present when he signed the statement on April 19, 1949, then he testified that he did not remember and did not know whether he had ever met him at that time; the testimony of Arkie Lee Lewis does not indicate that Yarborough was present, but is not conclusive of the matter; appellee further testified on cross-examination by appellant that he did not get Mr. Yarborough to represent him on October 5, 1945, when he had the first injury, but that it was a long time afterwards that he employed Mr. Yarborough. Mr. Yarborough did not take the stand as a witness in the case. The record itself is not absolutely positive one way or the other as to whether Mr. Yarborough was present when the statement was signed, and Mr. Yarborough's statement to the jury that he did not even know Lewis at that time gave to the jury direct evidence on that question. We think this was improper.

█ With respect to the argument complained of in appellant's fifth point the following occurred:

"I don't know how good the doctor is; I don't. Don't know whether he gave the same attention to this poor Negro that he would give one of you, me or somebody else. The insurance company sent him up there—".

Pertinent objections and request for instructions were made to the above argument (which are in the record) and the court withdrew same from the jury.

We think the above type of argument is improper—contrasting wealth and poverty has consistently been condemned by our courts and this type of argument was one which would be calculated to create sympathy for the "poor Negro" who might not

have been given the same attention that the doctor would have given to the members of the jury and others.

■ With respect to the argument complained of in appellant's seventh point the following occurred:

"Gentlemen, with that I am through. I believe that the evidence shows that this Negro is trying to do what is right. He is not smart; he is ignorant; can't remember. You heard him say, 'I want to be honest; want to do the best I can,' and think it was apparent. This is a suit on a contract—His color is black—".

Pertinent objections and request for instructions were made to this argument (which is in the record) and the court instructed counsel to avoid that character of argument. Appellee's counsel further reiterated as follows:

"Mr. Yarborough: We object to Mr. White's objections. It is obvious the color of anybody in this court.

" 'The Court then stated: 'The court has passed on it. Go ahead.' "

We think this type of argument is similar to the "poor Negro" line of argument discussed above with reference to appellant's point five.

■ Whether the impropriety of the arguments hereinbefore related was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case are questions which we must determine as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Rules 434 and 503, Texas Rules of Civil Procedure.

■ While we overrule appellant's points twelve and thirteen that the evidence does not support the verdict and is contrary to the greater preponderance of the evidence, we do think this case is a weak case on the facts. Appellee was injured in 1945, signed a final compensation settlement receipt, allowed his case to remain dormant before the Industrial Accident Board for at least four years and only he and his wife testified in his behalf; the record also shows that he went to several doctors but he brought no medical witness to testify in his behalf. The only doctor who testified (and on behalf of appellant) estimated Lewis' disability at one week. Lewis' and his wife's testimony was somewhat vague as to the period of his disability. His claim that during the two year period following October 5, 1945, he was unable to secure and retain employment is rebutted by the undisputed evidence that he did actually work for a period of at least six months during the two year period. However, of course, the mere fact that a claimant works and earns money after an injury is generally not conclusive on the issue of his capacity to obtain and retain employment. Texas Employers Ins. Ass'n v. Moran, Tex.Civ. App., 261 S.W.2d 855.

■ Seven of the nine arguments were the subject of various instructions of the trial court; had some (or possibly all) of these seven arguments been the only objectionable arguments in the case perhaps the instructions of the trial court might have rendered such arguments not reversible under such cases as Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, and King v. Federal Underwriters, 144 Tex. 531, 191 S.W.2d 855. But on the other hand some of these improper arguments might not have been thus "cured," Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Southwestern Greyhound Lines v. Dickson, supra. However two of the nine arguments were arguments which we think the trial court erred in not sustaining objections to and in not instructing the jury to not consider. The aggregate effect of all the arguments which if not definitely improper are at least "borderline" may be taken to enhance the effect of these arguments which are definitely improper, Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

Considering all these arguments, the closeness of the fact issues, the weakness of appellee's case, the persistence of appellee's counsel in making improper arguments and in getting out of the record, it is our best judgment that such arguments were in law reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

The judgment of the trial court is reversed and the cause is remanded to the district court for a new trial.

Reversed and remanded.