## Southern Pacific Company v. Price M. Hubbard

No. A-5883. Decided December 12, 1956.
Rehearing overruled January 23, 1957.
(297 S.W. 2d Series 120).

*Kemp, Smith, Brown, Goggin & White* and *William Duncan*, all of El Paso, for petitioner.

The Court of Civil Appeals erred in holding that the arguments complained of were not sufficiently inflammatory as to have been incurable by objection, where said argument attacked the integrity of petitioner and his attorneys, accused them of punishing witnesses; changing the testimony of a witness, and

making an inflammatory appeal to passion and prejudice. Smerke v. Office Equip. Co., 138 Texas 236, 158 S.W. 2d 302; Wade v. Texas Emp. Ins. Ass'n, 244 S.W. 2d 197; Texas Emp. Ins. Ass'n. v. Haywood, 266 S.W. 2d 956.

*Andress, Lipscomb, Peticolas & Fisk,* of El Paso, for respondent.

MR. JUSTICE MCCALL delivered the opinion of the Court.

This is a suit by an employee against a railroad under the Federal Employers' Liability Act to recover damages for personal injuries. The only issue on appeal concerns improper argument to the trial jury made by the attorney for the employee.

Price M. Hubbard ,respondent, was a mechanic boilermaker employed by the Southern Pacific Company, petitioner, in its maintenance department at El Paso, Texas. He had worked as a boilermaker for the railroad company for sixteen years. In 1941 he sustained a back injury which caused him severe pain until he submitted to an operation in 1943 to fuse the last two joints in his spine. This surgical fusion of the fourth and fifth lumbar segments to the sacrum proved successful and he resumed "light work" for the railroad a few month later. The back continued to give him trouble and he received treatment therefor, including the wearing of a brace, until 1946. Thereafter he resumed his full duties and there is no further evidence of treatment or disability from this injury.

In 1953 the railroad was converting to diesel engines, which have no boilers, and was therefore laying off a number of boilermakers each week, those with the lowest seniority being laid off each week. Hubbard was laid off in this process on December 14, 1953.

About two months after being laid off he filed suit for an injury he had sustained on December 7, 1953. He first filed suit in California but dismissed the suit there and refiled in Texas. Hubbard himself was the only witness at the trial who testified as to the accident, but another boilermaker, H. A. Wagner, testified as to circumstances surrounding the accident though he did not actually see Hubbard fall. Wagner was laid off by the railroad about a month after Hubbard and at the time of the trial worked for the Texas Company.

Hubbard testified that the accident occurred in the following

manner:. At the end of the work day a number of boilermakers were returning their welding tools to the tool room. These tools, consisting of welding equipment and drums of acetylene and oxygen, weighed several hundred pounds, and were loaded on two-wheel pushcarts. The boilermarkers were proceeding in a line down a walkway in the boiler shop, each pushing his tool cart. Hubbard was followed by another boilermaker, M. S. Aguilar, who in turn was followed by Wagner. Aguilar slipped on a wet spot on the concrete floor and released the handles of his cart. The cart dropped forward onto its base, and in doing so fell upon Hubbard's heel. He fell to the floor and grapped his heel in pain. Wagner did not see the accident but came up in time to hear Aguilar explain that he had slipped and apologized for bumping Hubbard's heel. Wagner put up Hubbard's tool cart and then returned to help Hubbard to his feet. He supported Hubbard as the latter limped to the time clock to check out.

Next day, December 8th, Hubbard went to a doctor for treatment of the injury to his heel. There is no record of any complaint about his back. On December 9, 1953, Hubbard returned to the shop and made a written report of the accident, stating therein that he had injured the heel on his right foot. No injury to his back was mentioned in the report. Among other matters he also reported that the day was clear and that it was not raining or snowing. The report was witnessed by Wagner, who was Chairman of the Union Grievance Committee, and several other railroad employees. Aguilar was listed as the only witness to the accident. On December 11th Hubbard returned to the doctor for further treatment and on this occasion complained not only of his heel but also of pain in his lower back.

At the trial Hubbard testified that he had fallen on his "tail bone" and thus injured his back as well as his heel. Hubbard testified that as he leaned forward pushing his heavy cart, Aguilar's cart dropped on his right heel as it protruded behind him. Counsel for the railroad attempted to show by cross-examination of Hubbard that being thus tripped as he walked leaning forward he would have fallen forward and not backward upon his "tail bone." Hubbard also testified it was raining or snowing the day of the accident and the roof of the shop leaked and caused the wet places on which Aguilar slipped. Wagner testified the day was clear but stated that there was a wet spot on the floor from the leaking roof. Aguilar did not testify. The record shows that Hubbard's attorney caused a subpoena to be served upon Aguilar and he was in attendance on the court throughout the trial, but was not called as a wit-

ness. Hubbard testified that his attorney had told him that before the trial Aguilar had been ordered to see the attorney for the railroad.

The railroad introduced evidence from the Federal Weather Bureau records that the day was clear and the last precipitation had been .02 of an inch on December 5th. The jury found that Aguilar was negligent in running into Hubbard, and that the railroad allowed the roof to leak and was thereby negligent in failing to furnish Hubbard a safe place to work. There was much conflicting medical testimony concerning whether Hubbard was disabled or not, and whether any disability he might have was due to the accident on December 7, 1953 or to the old back injury of 1941. The jury awarded Hubbard $17,000. The judgment of the trial court for this amount has been affirmed by the Court of Civil Appeals. 290 S.W. 2d 547.

The railroad complains of the following statements to the jury by Hubbard's attorney in his opening argument:

"And so Wagner comes up, having been some twenty or twenty-five paces behind and seeing Aguilar right behind Hubbard, but having for the moment evidently looked away for some reason, and not seen him. I would to God that he had seen him because he is not working for this company and could come here unafraid and tell us the facts about it if he had just seen it * * *.

\* \* \*

"* * * and if there was any doubt about it, they would have had Aguilar, who pushed this cart into Hubbard, and if there was any doubt about it, they would have one or a dozen or twenty-five other people who were down there * * *.

\* \* \* \*

"He's down at Goodwill Industries part of the time with a bunch of cripples, epileptics and so on, a charitable organization. And I say that is a charitable organization that is not formed here to assume the obligations of the Southern Pacific Company. I say let that place be taken by somebody who was not hurt by the Southern Pacific Company. The people of this community don't maintain that for the benefit of the Southern Pacific Company, and Hubbard should be out of there and the place taken by someone who has no recourse * * *.

\* \* \* \*

"Of course, according to them, anybody that sues the railroad for injuries and their wife and anybody that says 'good morning' to 'em is probably a thief and a liar, but you saw Mrs. Hubbard here and you saw the other people here and you saw Hubbard here * * *."

The railroad also complains of the following statements in the closing argument of Hubbard's attorney:

"Yes, I could have put Aguilar on the stand if I had wanted to vouch for him after he had been up there talking to the attorney and claim agent for this railroad, with which he is employed and would like to hold his job. And Oh, the wrong that I do in even suggesting that this railroad might punish a man for coming in. The testimony shows that instead of subpoenaing the next door neighbor the week before so he could be talked to * * * I wasn't born yesterday * * * I subpoenaed him at two o'clock to come here at 3:30, while they were here, and so he comes in and you heard him. He told the truth about it, and I wonder what will happen to him. I hope nothing."

(The above comment referred to a witness, E. L. Bennett, who also was an employee of the railroad and who lived next door to Hubbard. Bennet testified to Hubbard's disability.)

"And then when I know that Aguilar is out there and they have talked to him and they have the strings on him, he has got a job that undoubtedly he wants to hold, or he wouldn't be there, and they talk about why I didn't put him on the stand and vouch for him.

\* \* \* \*

"* * * and the evidence in this case is that last Thursday, I, on behalf of Hubbard, subpoenaed that man to be here, and the evidence is, and as Mr. White said, certainly I wouldn't have done that unless I had a pretty good idea that he not only knew about the witness * * * about this accident * * * but would tell the truth about it, and the evidence is that when I was out there Sunday afternoon that he got his orders to appear up with Mr. White and Mr. King on Monday morning, and then we know that he was out there in the hall and he was available if I wanted to talk to him and to find out if there had been any change since he saw those two gentlemen. Oh, this Lily-white railroad! Oh, aren't we anointed! We represent the railroad; And so he was here for me to see and to find out. No, when we put the witness on the stand we vouch for him,

and on Monday morning and Tuesday and today I can't vouch for Mr. Aguilar.

\* \* \* \*

" 'Second choice' they say you are to this man, where this man is concerned. Give him a fair trial? Do they want this man to have a fair trial? Yes, that does make me a little sore.

\* \* \* \*

"Well, when I see this man and know him well, they come in and say because, in common with dozens of others, that anybody who sues this railroad is something less than honorable, can't tell the truth, and they lie, and anybody else that comes in, even under subpoena of the Court, if they dare say anything in our favor, they are not telling the truth. And that is calculated to provoke a person."

The railroad contends that by these arguments Hubbard's attorney accused the railroad officials and attorneys of intimidating the railroad employees by threats to fire them so that they were afraid to testify to facts favorable to Hubbard. Specifically Hubbard's attorney argued that the railroad had intimidated Aguilar so that he changed his story and was afraid to tell the truth for Hubbard. He also argued that it was necessary to summon E. L. Bennett, a railroad employee, during the trial so that the railroad attorneys would have no opportunity to influence him and that Bennett might be punished for his testimony. Hubbard's attorney also argued that if Wagner had seen the accident he would have told the truth about the matter since he was not subject to intimidation, being no longer a railroad employee.

The railroad also complains that Hubbard's attorney in his opening argument commented upon the failure of the railroad to call Aguilar as a witness, when Aguilar had been summoned by Hubbard and was present in the courthouse and therefore as available to Hubbard as the railroad. By such comment Hubbard's attorney inferred that Aguilar would, if called, have testified for Hubbard. Petitioner also complains that the other quoted statements attack the integrity of officials and counsel of the railroad and appeal to the passion and prejudice of the jury, and that such statements are not warranted by any evidence in the record nor in reasonable response to any statement made at any time by the railroad's attorney.

We agree with the above contentions of the petitioner here-

in. In our opinion the argument was improper and unsupported by the record. The statements were not permissible comments or inferences from the testimony in the case nor were they reasonable replies to anything said by the railroad's attorney.

Respondent contends that the above arguments were partially provoked by petitioner. He points out that petitioner introduced into evidence the subpoena for Aguilar issued at the request of respondent. He claims that this evidence justified his comment in his opening argument that if there had been any doubt about the facts pertaining to the accident that the railroad would have called Aguilar. In reply thereto the railroad's attorney argued that respondent had issued the subpoena and yet did not call Aguilar to the stand. Neither the evidence of the subpoena nor the argument by petitioner's attorney under the above circumstances justified the attorney for respondent's testimony in his closing argument that the railroad had intimidated Aguilar so that he was afraid to tell the truth on the witness stand.

The railroad, as set forth in the summary of the evidence herein, tried to prove that the accident did not occur because of a wet spot on the floor, and that respondent did not injure his back in the accident. This effort of the petitioner to rebut respondent's testimony certainly did not justify the argument that "anybody who sues the railroad for injuries and their wife and anybody that says 'good morning' to 'em is probably a thief and a liar." Nor did petitioner's later argument upon its evidence that the accident did not occur in the manner claimed by Hubbard and that his back was not injured thereby justify the statement by his attorney in his closing argument that it was the general practice of the railroad to claim that anyone who sued the railroad was less than honorable and a liar and that all those who testified for him were also liars.

Respondent Hubbard also contends that the attack upon the integrity of the railroad was justified by the argument of its attorneys that the railroad had been fair to Hubbard, having kept him on the payroll for several years on limited duty after he was injured in 1941. This argument was supported by the record and did not justify the general assault upon the character of the railroad officials and attorneys. It is also contended that the improper argument of Hubbard's attorney was provoked by a comment made concerning the loudness with which he argued. Certainly a comment upon the fact that his argument was loud cannot be held to justify an attack upon the integrity of the opposing party.

There was evidence in the record that Hubbard at the time of the trial was working four days a week as a salesman and floor walker in the store of Goodwill Industries. This evidence was relevant to issue of Hubbard's disability. It is contended that this evidence justified the argument by Hubbard's attorney that the railroad by evading its obligation to compensate Hubbard for his injuries was thereby forcing the public through this charitable organization to provide for Hubbard's support. This contention is also rejected.

■ However, the record reveals that petitioner made only one objection to the argument of Hubbard's attorney. It objected to a comment by Hubbard's attorney on the failure of the railroad to produce any witnesses to contradict Hubbard's testimony as to the cause of the accident. This objection was overruled by the trial court and no further objection was made to the argument of Hubbard's counsel. No objection was made as to the argument here complained of. Thus the railroad waived its right to complain on appeal as to this argument, unless it is so prejudicial that an instruction by the trial court to the jury to disregard it would not have removed from the mind of the jury the prejudice produced thereby. Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054. We need not decide whether any one of these statements alone was so prejudicial, because in such cases the cumulative effect of all the statements must be considered. Smerke v. Office Equipment Co., 138 Texas 236, 158 S.W. 2d 302; Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115; United States Fidelity & Guaranty Co. v. Lewis, 266 S.W. 2d 194 (ref., n.r.e.).

■ We are of the opinion that the cumulative effect of all these statements could not have been cured by instructions from the trial court, and therefore petitioner's right to complain thereof was not waived. We particularly note that much of the improper argument was in effect testimony by Hubbard's attorney about matters not in the record. Such statements were most prejudicial, and if true, should have been made under oath, subject to the pains and penalties of perjury, and subject to cross-examination and rebuttal. No instruction from the court could make the jury ignorant of these alleged facts stated by Hubbard's attorney.

Hubbard contends that the railroad should not be allowed to remain silent, gamble on the verdict, and upon losing complain of the argument for the first time in its motion for new trial. This contention invokes a well-established policy applic-

able when the trial court could have cured the error by appropriate instructions to the jury. However, where the error is incurable the policy of the Texas courts is set forth in Rule 269, Texas Rules of Civil Procedure, wherein the first and primary duty is placed upon the attorney making the argument to keep within the record and refrain from improper argument, and the duty is next placed upon the trial court to halt improper argument upon his own motion, and last if the trial court does not do so, then "opposing counsel may ask leave of the court to rise and present his point of objection." If the opposing counsel fails to object in such cases, he does not waive his right to complain thereof.

Respondent also contends that the argument, if improper, was harmless error and had no effect upon the jury. He contends that the evidence as to liability was practically undisputed and that the evidence as to damages would have supported a judgment several times larger than that awarded by the jury. We believe that an examination of the whole record reveals that there was a serious question of fact both as to liability in this case and as to whether Hubbard sustained any injury to his back in the accident complained of. If it is assumed that the railroad was negligent and that this negligence proximately caused Hubbard to be totally disabled, then $17,000 is certainly not excessive, but this is an excessive amount for the railroad to pay if it was not negligent or if the accident did not in fact produce further injury to Hubbard's fused spine.

Respondent argues with force that it is most difficult for an appellate court to gather from the record the true conditions surrounding an argument to the jury and that the trial judge who was present and observed such conditions considered petitioner's assignments of error in its motion for new trial and overruled the motion. It is contended that anyone who was present at the trial and who observed all the circumstances would be of the opinion that the jury would have reached the verdict they did whether these arguments were made or not. The error was therefore harmless. This contention of respondent's attorney seems less convincing when we remember that he himself was present at the trial and presumably observed and evaluated all the circumstances and conditions existing just before he made his arguments. At that time with all the conditions fresh before him, their evaluation present in his mind, and the possibilities of an adverse verdict looming before him, he decided to make the improper arguments. So he made them, and won. What he now argues with his victory secure and the

memory of the fear of defeat grown dim, is not any more convincing than his res gestae action at the time of the trial.

Upon the whole record we believe that the improper argument was not harmless but in the language of Rule 434, Texas Rules of Civil Procedure, "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." While each case of improper argument must be considered upon its own peculiar facts, it is noted that the improper argument in this case "combines both the evils of introducing purported evidence not in the record and appeals to passion and prejudice." Houseman v. De Cuir, 155 Texas 127, 283 S.W. 2d 732. See also Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115; Robbins v. Wynne, (Com. App.) 44 S.W. 2d 946; Morrison v. Smith, 138 S.W. 2d 280 (no writ); Stephens v. Smith, 208 S.W. 2d 689 (er. ref.); Airline Motor Coaches v. Campbell, 184 S.W. 2d 532 (er. ref., w.m.).

The judgments of the trial court and Court of Civil Appeals are reversed and this cause is remanded for new trial.

Opinion delivered December 12, 1956.

MR. JUSTICE CALVERT, joined by JUSTICES GRIFFIN and WALKER, dissenting.

I agree with the statement of the majority that "each case of improper argument must be considered upon its own peculiar facts," but I suggest that in deciding cases involving improper argument we owe it to ourselves and to practicing attorneys to adhere, as consistently as is possible, to unchanging rules and principles.

It is said by petitioner and agreed to by the majority, that the argument complained of is improper because it and the inferences to be drawn from it were either highly prejudicial and inflammatory or had the effect of bringing new evidence before the jury. The condemned inferences are itemized in the majority opinion as follows: (1). An inference that if certain witnesses had been called to the stand they would have testified for respondent. (2). An inference that the petitioner had intimidated the witness Aguilar so that he was afraid to tell the truth, and that if petitioner had had an opportunity to do so it would have intimidated the witnesses Bennett and Wagner. (3). An inference that officials of and counsel for petitioner were lacking in integrity.

I suggest that we do wrong when we tie into one bundle a great many items of argument and then label it all "improper," condemn it as "prejudicial" and conclude that it was "incurable." If we are to discharge our duty of determining whether argument is improper and whether it was calculated to cause and probably did cause the rendition of an improper judgment, I think, in fairness, we owe it to the parties, and particularly to the party from whom we take the jury verdict, to analyze the argument. In the absence of analysis, all of the argument goes into the books as improper, prejudicial and incurable.

Argument should not be condemned because of improper inferences which may be drawn from it unless it appears probable — more likely than not — that the jury drew such inferences. The very wording of Rules 434 and 503, Texas Rules of Civil Procedure, prescribes that test. I submit that there is no impropriety in the reasonable inferences to be drawn from the following argument:

" 'Second choice' they say you are to this man, where this man is concerned. Give him a fair trial? Do they want this man to have a fair trial? Yes, that does make me a little sore."

A qualification made by the trial judge to petitioner's bill of exceptions to this particular argument contains the following recitation: "That counsel for defendant in arguing before Plaintiff's closing argument, contended to the jury that the jury in the cause was second choice to the Plaintiff, and that he had first chosen to file his case before a California court in preference to a Texas court." It thus appears that the argument condemned as improper, prejudicial, and incurable was openly invited. Counsel for petitioner had charged in his argument that the Texas jury was "second choice" to the respondent and had inferred that respondent would have preferred to try his case in a California court. Surely it was not improper for counsel for respondent in reply thereto to argue, in substance, that counsel for petitioner did not want the respondent to have a fair trial, else they would not seek to prejudice him before the Texas jury by charging that the jury was second choice with him as a forum for trying his case. All that counsel for respondent charged in this portion of his argument was that petitioner's counsel had sought to create prejudice against him and thereby prevent him from obtaining a fair trial. The argument by petitioner's counsel was reasonably calculated to create prejudice against respondent and I can think of no reason counsel for petitioner could have had in making the argument except to create prejudice. Why was it improper to say so?

The only argument which petitioner contends called upon the testimony of absent witnesses in support of respondent's case is that in which it was said:

"* * * and if there was any doubt about it, they would have had Aguilar, who pushed this cart into Hubbard, and if there was any doubt about it, they would have one or a dozen or twenty-five other people who were down there."

Argument almost identical with the first part of that here quoted, and in a fact setting almost identical also, was held harmless by this Court in Aultman v. Dallas Ry. & Term. Co., 152 Texas 509, 260 S.W. 2d 596, 600. In that case it was held that where each party commented, in the presence of the jury, on the failure of the other to use a particular witness, equally available to both, the only reasonable inference to be drawn therefrom was that the witness "would not testify for either party, else he would have been called by the one or the other."

In this case Aguilar was placed under subpoena by the respondent. During the course of the trial petitioner introduced the subpoena in evidence, an act quite evidently calculated and intended to create in the minds of the jury the impression that Aguilar would not confirm respondent's account of the accident else he would have been used as a witness by respondent. Respondent then made the above-quoted argument to the jury, an argument quite evidntly calculated and intended to create in the minds of the jury the impression that Aguilar would not dispute respondent's account of the accident else he would have been used as a witness by petitioner. In reply to respondent's argument petitioner's counsel then commented to the jury on the failure of respondent's counsel to call Aguilar as a witness, an argument quite evidently calculated and intended to create in the minds of the jury the impression that Aguilar would not support respondent's account of the accident. I respectfully submit that the first part of the argument above quoted, even if improper and uninvited, was harmless, and that the point is specifiically ruled, with no basis of distinction, by Aultman v. Dallas Ry. & Term. Co., supra. Other cases decided since the adoption of Rules 434 and 503, Texas Rules of Civil Procedure, holding much stronger argument of this general character not to be so highly prejudicial as to be incurable are King v. Underwriters Exchange, 144 Texas 531, 191 S.W. 2d 855, 856, and Goforth v. Alvey, 153 Texas 449, 271 S.W. 2d 404.

The latter part of the quoted argument, to wit, "and if

there was any doubt about it they would have one or a dozen or twenty-five other people who were down there" is but a way of saying that petitioner had offered no testimony in contradiction of that of respondent and had thereby left the testimony of respondent undisputed in the record. Such argument is not improper. Wade v. Texas Empl. Ins. Ass'n., 150 Texas 557, 244 S.W. 2d 197, 201.

With respect to the remaining excerpts of argument quoted in the majority opinion, some undoubtedly were of a prejudicial and inflammatory character. Into this category we may place the statements that "anybody that sues the railroad for injuries and their wife and anybody that says 'good morning' to 'em is probably a thief and a liar," and that "anybody who sues this railroad is less than honorable, can't tell the truth, and they lie, and anybody else that comes in, even under subpoena of the court, if they dare say anything in our favor, they are not telling the truth."

Other items of argument, quoted in the majority opinion, undoubtedly were calculated to give rise to the inference that petitioner had intimidated the witness Aguilar by threatening him with loss of his employment so that he was afraid to tell the truth, and that it would have intimidated the witnesses Bennett and Wagner in the same manner if it had had the opportunity to do so. I think it may be fairly said also that inference was probably drawn from the argument by the jury. Likewise it may be fairly said that certain of the argument was reasonably calculated to give rise to an inference that officials and counsel for petitioner had induced Aguilar to forego an appearance for the purpose of telling the truth. I think it probable that the jury drew this inference from the argument. But assuming that all of the argument here referred to may be properly labeled as improper and prejudicial, the real question with respect thereto is whether a reversal should be ordered in the absence of timely objction. In arriving at an answer to this question we must assume that all means would have been availed of to eliminate any possible prejudice arising out of the argument; we must assume that if proper objection had been made, counsel for respondent would have apologized for the argument and would have withdrawn it, and that the trial judge would have instructed the jury not to consider it for any purpose and would have reprimanded counsel for respondent for having made it. Considered in this light, it is my opinion, judged on the basis of the majority of the more recent decisions of this Court, that the vice in the argument could have been cured and that a reversal should not be ordered.

Cases which seem to me to compel the conclusion I have reached are Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054; Texas & N. O. R. Co. v. Sturgeon, 142 Texas 222, 177 S.W. 2d 264 and King v. Federal Underwriters Exchange, 144 Texas 531, 191 S.W. 2d 855.

In Ramirez v. Acker, supra, argument which inferred that plaintiff's counsel had practiced a fraud on the plaintiff and ought to be indicted for filing the suit; that the defendant was being highjacked for "blood money" and that the suit, although brought in the name of an individual, was brought primarily for the benefit of an oil company was "of such a nature that, if it had been objected to, a reprimand by the court to counsel for making such an argument and an instruction by the court to the jury to disregard such argument would have rendered it harmless."

In Texas & N. O. R. Co. v. Sturgeon, supra, argument that "I don't think a man on this jury would sell his leg for $100,-000" was held to be curable, the court saying: "The objection should have been sustained and requested instruction given. Prompt action on the part of the court, in response to the objection and request, would have removed the harmful effect. It was also said in that case that argument that a particular witness "was lying on the witness stand 'to keep his job with the railroad'" and similar argument made with respect to another witness was only "border-line argument." The necessary inferences from that argument were the same as the inferences in this case, that is, that the witnesses were intimidated by the railroad and would be discharged if they did not testify falsely. All of this argument was held by this Court to be curable.

In King v. Federal Underwriters Exchange, supra, several items of argument were claimed to be improper and prejudicial. One item of argument contrasted the wealth of the defendant with the poverty of the plaintiff. Another deliberately and specifically inferred that if a witness had been permitted to do so, over objection, he would have testified on plaintiff's behalf. Another inferred that unless given a lump sum payment those who held a mortgage against the same would take the plaintiff's store and his house. Another informed the jury that if the insurance company had been going to settle the case it would already have done it. It thus appears that the argument was replete with prejudicial statements and statements introducing new testimony and yet, the trial court having sustained

objection to each such item of argument and having directed the jury not to consider it, this Court held that the harmful effect of the argument was eliminated and that a reversal would not be justified. This Court further held that the cumulative effect of all of these items of argument would not require a reversal.

The cases cited by the majority are not authoritative on the question here involved. Many of them were decided before the adoption of Rules 434 and 503, T.R.C.P. and were specifically and pointedly decided on the basis of presumed harm. Into this category fall the cases of Robbins v. Wynne (Com. App.), 44 S.W. 2d 946; Morrison v. Smith, Texas Civ. App., 138 S.W. 2d 280, no writ history, and Smerke v. Office Equipment Company, 138 Texas 236, 158 S.W. 2d 302.

In Robbins v. Wynne reversal was ordered in spite of the fact that counsel withdrew the argument and the court instructed the jury not to consider it. The decision can hardly be held to compel a reversal in this case, however, because it was specifically predicated on the conclusion that the withdrawal would not render it possible for the court *"to say beyond a reasonable doubt* that no injury resulted." In Morrison v. Smith it was held that a reversal was required because there was in the case *"a reasonable doubt* of the harmful effect of such argument." In Smerke v. Office Equipment Company a reversal was ordered because of the cumulative effect of a number of items of improper argument, in spite of the failure to object thereto, because they were "of such nature that withdrawal or instruction would not render their harmful effect *free from doubt."*

In other cases cited by the majority timely objection was made but was ignored or overruled. Obviously, these cases are not in point. Into this category fall the cases of Stephens v. Smith, Texas Civ. App., 208 S.W. 2d 689, writ refused, n.r.e.; Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115, and U.S. Fidelity & Guaranty Company v. Lewis, Texas Civ. App., 266 S.W. 2d 194, writ refused, n.r.e In Stephens v. Smith, counsel argued that an attorney for the plaintiff had deliberately planted a lie in the mouth of a minor witness. Vigorous objection thereto was overruled. In United States F. & G. Co. v. Lewis, there were nine items of improper argument. Objection was overruled to two of the items and reversal rested heavily on these two items. The opinion in Southwestern Greyhound Lines v. Dickson indicates that counsel was

constantly objecting to the improper argument but that the court was either ignoring the objections or was overruling them.

There are two other cases cited by the majority; Airline Motor Coaches v. Campbell, Texas Civ. App., 184 S.W. 2d 532, writ refused, w.m., and Houseman v. De Cuir, 155 Texas 127, 283 S.W. 2d 732, 735. A reversal was ordered in Airline Motor Coaches v. Campbell because of improper argument, but the opinion of the court does not reflect whether there was or was not objection to such argument. The decision in Houseman v. De Cuir is specifically rested on the idea that a sufficient objection had been made and had been overruled. The court was sharply split over whether a sufficient objection had been made. The majority held there had been, and as a basis for their decision the majority said: "We think that on the bill of exception as a whole, the case is substantially the same as if no instruction to the jury had been given, or even as if the objection had been overruled."

It thus appears that none of the cases cited by the majority and decided since the adoption of Rules 434 and 503 support their conclusion that argument of the type made in this case should work a reversal where complaining counsel sat idly by and took a chance on obtaining a verdict before raising any question concerning the argument. On more than one occasion this Court has declared it to be the duty of counsel to object to improper argument at the time it is made if a reversal is to be expected. It has been said by the Court that the trial court "in most instances can prevent harmful results from improper argument, but can more easily do so, and with less likelihood of having his action misinterpreted by the jury as indicating his view of the merits of the case, if counsel is reprimanded and the jury is instructed, at the time the argument is made, and in response to a timely objection." Texas Company v. Gibson, 131 Texas 598, 116 S.W. 2d 686, 687.

I agree that much of the argument of respondent's counsel was improper and prejudicial in character. No objection was made to this type of argument. If timely objection had been made and had been overruled I would join unhesitatingly in the reversal of the judgment because I would then conceive the case to be ruled by such former decisions as Stephens v. Smith, Southwestern Greyhound Lines v. Dickson and Houseman v. De Cuir. In the complete absence of objection, I cannot agree to reversal. It does not add to reversibility that several

items of improper argument are involved. If counsel had properly objected to one instance of improper argument the objection might have brought forth from the trial judge such a prompt and devastating rebuke that none of the other improper arguments would have been made. We should not presume the contrary. When we do we revert to the rule of presumed harm. Counsel should not be permitted to sit idly and quietly while improper argument is being made with the knowledge that he is secure in his right to take a transcript of the argument to his office and for thirty days comb it with a fine-tooth comb for statements which he can later present to an appellate court with the successful claim that if no one of the items he has found is sufficiently prejudicial to require a reversal, the cumulative effect of all of them is sufficient. To permit this procedure is to authorize an attorney to abdicate his duties as counsel in the case. He could as well return to his office to attend to other business while opposing counsel is presenting argument, trusting to the Court Reporter to record the argument and to the courts to grant him a new trial in spite of his own failure to perform his duties as an attorney.

Perhaps mention should be made at this point of Texas Emp. Ins. Ass'n. v. Haywood, 153 Texas 242, 266 S.W. 2d 856. Reversal was ordered in that case although the argument was not objected to, but the argument there was a direct appeal to the jury to disbelieve the defendant's only witnesses on a vital fact issue because they were negroes. Nothing was left to inference. The case should be and is an exception to the general rule. A stronger direct appeal to prejudice could hardly be imagined.

The majority's conclusion that most of the argument in this case could not have been rendered harmless by instruction seems to me to be based upon an erroneous test. They say: "No instruction from the court could make the jury ignorant of these alleged facts stated by Hubbard's attorney." Of course, an instruction could not make the jury ignorant of the argument. It is not pretended that it could. What is pretended, however, is that we have a right to assume that, having knowledge of the argument and the matters involved in it, the jury, nevertheless, would have obeyed the instruction of the court and would not have permitted that knowledge to enter into or otherwise affect their verdict. The "prejudice" would thus have been eliminated. When improper argument is held to be curable the question of harm is not reached. If proper steps are taken to remove its prejudicial effect, no prejudice remains to be harm-

ful. And if no objection is made, thus calling forth remedial measures from offending counsel and the court, the complaining party is held to have waived his right to have the question of harm reviewed.

On the whole it seems to me that the opinion of the majority in this case and the judgment they enter is wholly out of harmony and out of keeping with the late decisions of this Court. I would affirm the judgments of the Court of Civil Appeals and of the trial court.

Mr. Justice Norvell not sitting.

Opinion delivered December 12, 1956.

Rehearing overruled January 23, 1957.